## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **CHLOE BAKER** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:20-cv-03870** |
| | § | |
| **LONE STAR LEGAL AID** | § | |
| | § | |
| *Defendant.* | § | |

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

NATURE OF DISPUTE AND PROCEEDINGS ........................................................ 1

FACTUAL BACKGROUND .................................................................................... 2

ISSUES REQUIRING RESOLUTION ...................................................................... 7

STANDARD OF REVIEW ....................................................................................... 7

ARGUMENT .......................................................................................................... 8

    1.    Plaintiff failed to exhaust her administrative remedies because she did not file a timely charge of discrimination with the EEOC, and her untimely charge does not relate back to any timely submission. ................. 9

    2.    Plaintiff's alleged incidents of race-based harassment do not rise to the level of a hostile work environment and were promptly investigated and remedied by Lone Star. .................................................. 12

    3.    Lone Star was not required to accommodate, and did not discriminate on account of, Plaintiff's disabilities because they were not known to Lone Star during Plaintiff's employment. ................................................... 15

    4.    Lone Star did not retaliate against Plaintiff because it informed her of its decision to terminate her employment before she engaged in protected activity, and Lone Star's reason to terminate, lack of funding, was not pretextual. ...................................................................... 17

    5.    Plaintiff cannot establish a *prima facie* case of wrongful termination because of race. ........................................................................................ 18

CONCLUSION ..................................................................................................... 19

CERTIFICATE OF SERVICE ................................................................................ 20

CERTIFICATE OF CONFERENCE ........................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................. 7

*Austin v. Kroger Tex., L.P.*,
   864 F.3d 326 (5th Cir. 2017) .................................................................................. 8

*Baird v. Shagdarsuren*,
   No. 17-CV-2000, 2020 WL 208815 (N.D. Tex. Jan. 14, 2020) ....................... 8

*Brooks v. Firestone Polymers, L.L.C.*,
   640 F. App'x 393 (5th Cir. 2016) ........................................................................ 14

*Brown v. City of Houston*,
   337 F.3d 539 (5th Cir. 2003) .................................................................................. 8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................. 8

*Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*,
   759 F.3d 498 (5th Cir. 2014) .................................................................................. 8

*Eaton-Stephens v. Grapevine Colleyville Indep. Sch. Dist.*,
   715 F. App'x 351 (5th Cir. 2017) ........................................................................ 18

*Edelman v. Lynchburg College*,
   535 U.S. 106 (2002) ............................................................................................... 10

*EEOC v. Shell Oil Co.*,
   466 U.S. 54 (1984) ................................................................................................. 10

*Equal Emp. Opportunity Comm'n v. Vantage Energy Servs., Inc.*,
   954 F.3d 749 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1048 (2021) .............. 10

*Ernst v. Methodist Hosp. Sys.*,
   1 F.4th 333 (5th Cir. 2021) .............................................................................. 9, 10

*Feist v. La., Dep't of Just., Off. of the Att'y Gen.*,
   730 F.3d 450 (5th Cir. 2013) ........................................................................... 15, 17

*Hernandez v. Yellow Transp., Inc.*,
   670 F.3d 644 (5th Cir. 2012) ........................................................................... 12, 13

*Jennings v. Towers Watson*,
   11 F.4th 335 (5th Cir. 2021) ............................................................................. 9, 16

*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1994) .................................................................................. 8

*Moreno v. Brownlee*,
  85 F. App'x 23 (5th Cir. 2004) ................................................................... 18

*Moss v. Harris Cty. Constable Precinct One*,
  851 F.3d 413 (5th Cir. 2017) ................................................................... 15

*Owens v. Dallas Cty. Cmty. Coll. Dist.*,
  793 F. App'x 298 (5th Cir. 2019) ............................................................. 10

*Pac. Premier Bank v. Hira*,
  768 F. App'x 229 (5th Cir. 2019) ............................................................... 8

*Patton v. Jacobs Eng'g Grp., Inc.*,
  874 F.3d 437 (5th Cir. 2017) ................................................................... 10

*Williams v. McCollister*,
  671 F. Supp. 2d 884 (S.D. Tex. 2009) ........................................................ 7

**Statutes**

42 U.S.C. § 12101 ................................................................... 1, 7, 9, 16

42 U.S.C. § 2000e ...................................................................... passim

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................... 7

**Regulations**

29 C.F.R. § 1601.09 ...................................................................... 10

29 C.F.R. § 1601.12 ...................................................................... 10

29 C.F.R. § 1601.12(b) ................................................................... 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CHLOE BAKER** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:20-cv-03870** |
| | § | |
| **LONE STAR LEGAL AID** | § | |
| | § | |
| *Defendant.* | § | |

## MOTION FOR SUMMARY JUDGMENT

Defendant Lone Star Legal Aid ("Defendant" or "Lone Star") moves for summary judgment on Plaintiff Chloe Baker's ("Plaintiff") claims that she was discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA").

## NATURE OF DISPUTE AND PROCEEDINGS

On February 23, 2021, Plaintiff filed a Second Amended Complaint (Dkt. 17) (the "Complaint") against Lone Star, her former employer, alleging that Lone Star engaged in workplace harassment against her because of her race (African American), failed to accommodate her disabilities (post-traumatic stress disorder ("PTSD") and depression), and retaliated against her by terminating her employment, each in violation of Title VII and the ADA. The Complaint also contains claims for disability and race discrimination, which Lone Star understands to be claims for wrongful termination.

1

On March 8, 2021, Lone Star filed a Second Amended Motion to Dismiss (Dkt. 24)

Plaintiff's claims because she failed to file a timely charge of discrimination. On

February 24, 2022, the Court entered an Order (Dkt. 66) adopting a Memorandum and

Recommendation (Dkt. 50) that the Second Amended Motion to Dismiss be denied without

prejudice to refile on summary judgment. Lone Star filed its Answer on March 8, 2022.

(Dkt. 67). The discovery period closed on February 16, 2022.

## FACTUAL BACKGROUND

Lone Star is a non-profit organization that provides legal services and representation

to low-income individuals in Texas and Arkansas. Exh. 1, Ernest Brown Declaration

("Brown Declaration"), at 1 ¶ 1. Lone Star performs these services using various short-

term grants that are applicable to specific functions or projects (among other funding

sources). *Id*. at 1-2 ¶ 3. Due to fluctuations in funding associated with those grants, Lone

Star regularly employs individuals on a temporary basis pursuant to temporary worker

agreements. *Id*. at 2 ¶¶ 4-5.

In the spring of 2017, Lone Star's Military Veterans Unit (the "MVU") received a

short-term grant from the Texas Veterans Commission Project ("TVC"), which allowed

Lone Star to post several additional temporary employee positions at the MVU. *Id*. at 2-3

¶ 6. On April 2, 2018, Lone Star hired Plaintiff as a Paralegal II on a temporary basis in

connection with one of these postings. *Id*. at 3 ¶ 7. Plaintiff later signed a temporary worker

agreement notifying her of her temporary status. *See* Exh. 4 ("Apr. TWA [Temporary

Worker Agreement]"); *see also* Exh. 3 ("Baker Oct. Deposition"), at 178-83 ¶¶ 22-23

(authenticating signature).

On June 30, 2018, the TVC grant expired and Lone Star moved Plaintiff's and two other temporary employees' roles to another short-term grant applicable to the MVU. Brown Declaration, at 3 ¶ 8. As a result of that grant, Lone Star was able to renew each of Plaintiff's and the other two employees' temporary worker agreements for one to two additional three-month periods. *Id.*; Exh. 5 ("Jul. TWA"); Baker Oct. Deposition, at 190-92 ¶¶ 7-4 (authenticating signature); Exh. 6 ("Oct. TWA"); Baker Oct. Deposition, at 198 ¶¶ 3-21 (authenticating signature). After December 31, 2018, Lone Star was unable to identify another source of funding for Plaintiff's or the other then-remaining employee's positions. Brown Declaration, at 3 ¶ 9.

On December 21, 2018, due to lack of funding, Lone Star notified Plaintiff and the other temporary employee it would extend their temporary worker agreements for another thirty days before terminating their employment at the end of January. *Id.*; Exh. 7 ("Final Extension Notice"); Baker Oct. Deposition, at 198-200 ¶¶ 22-19 (authenticating Final Extension Notice and confirming receipt). Plaintiff signed a temporary worker agreement reflecting that final extension on December 26, 2018. Exh. 8 ("Jan. TWA"); Baker Oct. Deposition, at 200-01 ¶¶ 20-21 (authenticating signature). Plaintiff avers that she orally submitted her first complaint of workplace harassment on December 27, 2018, *after* being notified that her employment would terminate on January 31, 2019. Exh. 2 ("Baker Aug. Deposition"), at 102 ¶¶ 12-23 (identifying December 27, 2018 as Plaintiff's earliest complaint). She also submitted a written complaint on January 3, 2019. Brown Declaration, at 4 ¶ 10; Exh. 9 ("Internal Complaint"), at LON0027.

3

The gist of Plaintiff's claim of racial harassment is that coworkers had referred to her in a racially derogatory manner by calling her a "girl", "the help" or "the young black girl." *See* Internal Complaint, at LON0027 (noting being referred to by a coworker as "the help" in a note); Brown Declaration, at 4-5 ¶¶ 10-15. The coworkers, however, had not actually used these terms when talking to Plaintiff. Brown Declaration, at 4-5 ¶¶ 10-15; Exh. 10 ("Paulding 'Helper' Note"), at LON0187; Exh. 11 ("Martinez 'Young Black Girl' Note"); Exh 12 ("Dannheim 'Girl' Note").[1] Instead, these terms had been used by Lone Star clients who were attempting to identify unknown Lone Star employee(s), and the coworkers had simply memorialized the clients' statements in practice notes later uploaded into Lone Star's intake system. *Id.*

Lone Star's Deputy Director, Mr. Ernest Brown, promptly investigated Ms. Baker's complaint by reviewing the relevant notes and by interviewing Plaintiff, Plaintiff's supervisor, and the named employees. Brown Declaration, at 4-5 ¶¶ 12-15. Brown concluded that no unlawful harassment had occurred, and that Dannheim's, Paulding's and Martinez's notes complied with Lone Star policy, requiring employees to document statements made during client meetings. Brown Declaration, at 4-6 ¶¶ 13, 15-16.

In addition to complaining about how her coworkers had [accurately] memorialized conversations with client, Baker, also complained about general workplace interactions with Martinez, including that Martinez had instructed an applicant to file a complaint against Plaintiff, told other coworkers that Plaintiff "kissed butt", and told Plaintiff to get

---

[1] Copies of each note have been provided by Plaintiff as attachments to her Amended Complaint (Dkt. 2). *See* Exhibits to Amended Complaint (Dkt. 2-1), at 4, 12, 14.

the office door once. Baker Aug. Deposition, at 130-31, ¶¶ 22-23, 160-63 ¶¶ 10-3 (averring that Plaintiff raised an oral complaint on December 27, 2018 in which she informed her supervisor that Martinez had instructed a client to file a complaint on Plaintiff); Internal Complaint, at LON0027. Brown, however, found little evidence that would support a claim that Martinez had harassed Plaintiff, much less harassed her because of her race. Brown Declaration, at 5 ¶ 16; Exh. 13 ("Investigation Notice"). At most, he concluded that these incidents rose to the level of ordinary workplace disputes. *Id.*

On January 22, 2019, Plaintiff provided Lone Star a doctor's note and asked to go on paid sick leave through the end of the month, which Lone Star granted. Exh. 14 ("Doctor's Note"); Baker Aug. Deposition, at 60-61 ¶¶ 11-6, 62-64 ¶¶ 22-9 (discussing the Doctor's Note and Plaintiff's request to Lone Star for sick leave). Plaintiff did not note any restrictions or conditions giving rise to the request, and Lone Star was unaware of any specific conditions or disabilities that she may have been suffering from at that time. *Id.*; *see also* Exh. 15 ("FMLA Paperwork Request"); Brown Declaration, at 6 ¶ 18.

On January 31, 2019, Lone Star notified Plaintiff that her employment had been terminated, as she had been told it would prior to her complaining about workplace harassment. Brown Declaration, at 6 ¶ 17; Exh. 16 ("Termination Notice"). Lone Star also notified Plaintiff of the final results of Brown's investigation into her complaint. Investigation Notice. The other temporary employee who had been told in late December that her employment would be terminated at the end of January was also terminated. Brown Declaration, at 6 ¶ 17.

On February 21, 2019, Plaintiff submitted an unverified intake questionnaire to the Equal Employment Opportunity Commission ("EEOC"), in which she complained of workplace harassment because of her race and retaliation. Exh. 17 ("Inquiry").[2] In this questionnaire, Plaintiff did not claim that she had been discriminated against because of a disability, and even answered "I do not have a disability" in the questionnaire. Inquiry, at LON0754, 0756.

On March 19, 2019, the EEOC cancelled an upcoming appointment with Plaintiff and closed her inquiry without issuing any notice of right to sue. Exh. 18 ("460-2019-02226 Activity Log"); Exh. 19 ("460-2019-02226 Detail"), at LON0758.[3] EEOC correspondence indicates that the EEOC closed the inquiry at Plaintiff's request. Exh. 20 ("EEOC Letter"). There is no evidence that Plaintiff filed a verified charge at any time prior to November 27, 2019, which would have been the deadline to file an administrative charge about any harassment that she suffered while working for Lone Star, or her termination from employment on January 31, 2019.

Plaintiff submitted a second unverified intake questionnaire on May 5, 2020 under a new case number, well after her original deadline to submit a charge, in which she claimed retaliation, racial harassment and, for the first time, disability discrimination. Exh. 21 ("Second Inquiry").[4] On May 20, 2020, in connection with that second questionnaire,

---

[2] Documents provided by the EEOC in response to a Freedom of Information Act ("FOIA") request submitted by Peter Goetschel, counsel for Lone Star, on January 5, 2022.
[3] *Supra* note 2.
[4] Documents provided by the EEOC in response to a FOIA request submitted by Goetschel on February 20, 2021.

Plaintiff filed her first verified charge of discrimination with the EEOC. Exh. 22 ("Charge").[5] On August 19, 2020, the EEOC dismissed Plaintiff's charge as untimely. Exh. 23 ("Notice of Dismissal").[6]

On November 13, 2020, Plaintiff filed her first Complaint of Discrimination (Dkt. 1) with this Court.

## ISSUES REQUIRING RESOLUTION

Whether there is sufficient evidence for a reasonable jury to conclude that:

1. Plaintiff submitted a charge sufficient to exhaust her administrative remedies as required to pursue a lawsuit under either Title VII or the ADA;

2. Plaintiff was subjected to a hostile work environment at Lone Star because of her race;

3. Lone Star failed to accommodate a known disability of Plaintiff;

4. Lone Star terminated Plaintiff because of her race;

5. Lone Star terminated Plaintiff because of her alleged disabilities; and

6. But for her complaints to Lone Star of a hostile work environment, Plaintiff would not have been terminated from her employment.

## STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. McCollister*, 671 F. Supp. 2d 884, 887 (S.D. Tex. 2009) (citing *Anderson v.*

---

[5] *Supra* note 4.
[6] *Supra* note 4.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the initial burden of identifying the basis for the motion and pointing to materials in the record that demonstrate the absence of a genuine dispute of material fact. *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a cause of action for which he bears the burden of proof. *Celotex Corp.*, 477 U.S. at 322–23; *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). If the movant satisfies the initial burden, the burden shifts to the nonmovant to produce evidence of a genuine factual dispute; he cannot merely rely on the pleadings. *Pac. Premier Bank v. Hira*, 768 F. App'x 229, 231 (5th Cir. 2019).

In reviewing a motion for summary judgment, the court must make all reasonable factual inferences in favor of the nonmoving party, but must not accept "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden. *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). If the movant satisfies his burden and the nonmovant does not, the court must grant summary judgment. *Baird v. Shagdarsuren*, No. 17-CV-2000, 2020 WL 208815, at *3 (N.D. Tex. Jan. 14, 2020) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994)).

## ARGUMENT

There is no genuine dispute that Plaintiff failed to exhaust her administrative remedies because she did not file a timely administrative charge of discrimination. Although there is evidence she did submit a unverified intake questionnaire to the EEOC before her charge-filing deadline, she did not later submit any charge which might relate

8

back to the questionnaire and cure any deficiencies under applicable charge-filing requirements. Accordingly, all of Plaintiff's claims must be dismissed.

Even if there is sufficient evidence for a reasonable jury to conclude that Plaintiff did file a timely charge of discrimination, there are still reasons why each of Plaintiff's claims must be dismissed: (i) Plaintiff's intake questionnaire does not address several theories of recovery that Plaintiff now asserts in her complaint, and as a result, she failed to exhaust her administrative remedies with respect to each such theory; (ii) Plaintiff's claim of hostile work environment based on race is unsupported by incidents sufficient to rise to the level of unlawful harassment, and many incidents raised by Plaintiff were never reported and/or were not based on race; (iii) Plaintiff produced no evidence on at least one necessary element sufficient to establish a *prima facie* case for her claims of discriminatory termination and failure to accommodate; and (iv) Plaintiff has not produced evidence sufficient for a reasonable jury to conclude that she would have been terminated *but for* protected activities under Title VII, in light of Lone Star's decision to terminate due to lack of funding.

1. **Plaintiff failed to exhaust her administrative remedies because she did not file a timely charge of discrimination with the EEOC, and her untimely charge does not relate back to any timely submission.**

Before a plaintiff may file suit in federal court under either Title VII or the ADA, the plaintiff must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC. *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021). To exhaust, a plaintiff must file a timely charge of discrimination with the EEOC and receive a notice of right to sue. *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th

Cir. 2021). Additionally, to satisfy exhaustion with respect to a particular claim, the claim "generally must arise out of the plaintiff's EEOC charge." *Id*. The charge must "put employers on notice of 'the existence and nature of charges against them.'" *Id*. at 338-39 (quoting *EEOC v. Shell Oil Co*., 466 U.S. 54, 77 (1984)).

An intake questionnaire may qualify as a charge of discrimination if it satisfies the EEOC's charge-filing requirements and can reasonably be construed as a request for the agency to take remedial action or otherwise settle a dispute. *Equal Emp. Opportunity Comm'n v. Vantage Energy Servs., Inc*., 954 F.3d 749, 753–54 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1048 (2021); 29 C.F.R. § 1601.09, § 1601.12 (EEOC charge-filing requirements). An intake questionnaire that "is not verified as required by EEOC regulations . . . cannot be deemed a charge." *Patton v. Jacobs Eng'g Grp., Inc*., 874 F.3d 437, 443 (5th Cir. 2017). The EEOC allows plaintiffs to file a written charge that does not conform to the requirements and later cure those defects, including failure to verify the charge under oath or affirmation. 29 C.F.R. § 1601.12(b); *Edelman v. Lynchburg College*, 535 U.S. 106, 115-19 (2002). However, an untimely, verified charge cannot relate back to a timely, unverified intake questionnaire to the extent the charge raises new unlawful employment practices "not reasonably expected to grow out of the allegations contained in the intake questionnaire." *Owens v. Dallas Cty. Cmty. Coll. Dist*., 793 F. App'x 298, 301 (5th Cir. 2019).

Here, there is no genuine dispute that Plaintiff's February 21, 2019 intake questionnaire to the EEOC, in which she alleged workplace harassment on the basis of race and retaliatory discharge for submitting an internal complaint, does not constitute a timely

10

charge of discrimination. *See* Inquiry. The Inquiry is not verified and does not include any affirmative request for the EEOC to act as required by the EEOC's charge-filing requirements. *Id*. Plaintiff also denied that she had a disability or was subjected to disability discrimination, and Plaintiff did not provide any reason to believe that her termination was motivated by anything other than retaliatory animus. *Id*. at LON0754, 0756.

Plaintiff has not produced evidence of any other charges or questionnaires submitted to the EEOC before her deadline to file a charge, November 27, 2019 (the date 300 days after her termination).

There is no genuine dispute that Plaintiff's untimely, verified May 20, 2020 charge (*see* Charge) bears no relationship with, and cannot relate back to, the Inquiry. EEOC records indicate that Plaintiff never submitted any other inquiries or charges under the Inquiry's case number, 460-2019-02226, and that the EEOC actually closed the Inquiry's case file on March 19, 2019, less than one month after the Inquiry's original submission. *See* 460-2019-02226 Detail, at LON0758; *see also* 460-2019-02226 Activity Log. Plaintiff instead submitted the Charge in connection with a separate intake questionnaire filed on May 5, 2020, which shares its charge number. *See* Second Inquiry; *see also* <u>Exh. 24</u> ("460-2020-03799 Activity Log").[7] Notably, in that Second Inquiry, Plaintiff confirmed that her claims had not previously been filed as a charge with the EEOC, demonstrating that Plaintiff understood that the Inquiry did not constitute a charge of discrimination and that she did not intend to amend or cure the Inquiry as a charge. Second Inquiry, at LON0317.

---

[7] *Supra* note 4.

Therefore, because Plaintiff failed to either submit a timely charge of discrimination or cure her Inquiry's defects, Plaintiff failed to exhaust her administrative remedies. Accordingly, her claims must be dismissed in their entirety.

In the alternative that the Inquiry may be considered a timely charge of discrimination or that the Charge may relate back to cure the Inquiry's defects, Plaintiff's claims of disability discrimination, failure to accommodate, and wrongful termination on the basis of racial discrimination (as opposed to retaliation) still must be dismissed for failure to exhaust administrative remedies. None of those claims would reasonably be expected to grow out of the allegations asserted in the Inquiry. *See* Inquiry (containing allegations only pertaining to a hostile work environment based on race and retaliatory discharge, and explicitly disclaiming any disabilities).

2.     **Plaintiff's alleged incidents of race-based harassment do not rise to the level of a hostile work environment and were promptly investigated and remedied by Lone Star.**

"To establish a claim of hostile work environment under Title VII, a plaintiff must prove [she] (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez v. Yellow Transp., Inc*., 670 F.3d 644, 651 (5th Cir. 2012).

Racial harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id*. (quotations omitted). "To be actionable, the

work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id*. In making a determination on whether a work environment is sufficiently hostile, the court must take into consideration "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. Courts do not, however, consider incidents of harassment not based on race. *Id*. at 654.

In her written complaint of workplace harassment, Plaintiff cited one instance of harassment potentially based on race—that a co-worker referred to her as "the help" in a note—and the remainder of the complaints are related to negative workplace dynamics and interactions more generally. *See* Internal Complaint, at LON0027. It is plain in the note referenced that the coworker, Paulding, was not addressing Plaintiff, and instead quoted a client who had stated "that attorney and her helper" during a meeting where the client did not know the names of the employees he was referencing. Paulding "Helper" Note, at LON0187.

Plaintiff later complained about two other practice notes in which a current coworker, Martinez, and a former coworker, Dannheim, quoted clients who had used terms Plaintiff found offensive due to their racial connotation. *See* Dannheim "Girl" Note (Dannheim quoting an applicant who referred to Plaintiff as a "girl"); *see also* Martinez "Young Black Girl" Note (Martinez quoting an applicant who referred to Plaintiff as "young black girl at the VA hospital").

Following a prompt investigation by Lone Star, it was concluded that each of the foregoing notes was drafted in compliance with Lone Star requirements related to notetaking. Brown Declaration, at 4 ¶ 13, 5 ¶ 15.

These notes are insufficient to create a hostile work environment under Title VII for several reasons. First and foremost, none of the coworkers drafted the notes as they did because Plaintiff was African American; they drafted them because the quoted terms were how the clients or applicants chose to identify unknown Lone Star employees, and Lone Star requires its employees to accurately record statements made during client meetings. *Id*. Second, the notes, which are each isolated events not directed at Plaintiff, are not "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Compare* Paulding "Helper" Note, at LON0187; Dannheim "Girl" Note; Martinez "Young Black Girl" Note *with Brooks v. Firestone Polymers, L.L.C.*, 640 F. App'x 393, 400 (5th Cir. 2016) (per curiam) (finding that an employee seeing racial slurs and "black faces" drawn in the bathroom stalls in the workplace, or hearing manager statements that as long as he was in charge of a certain unit, "there would be no blacks in the control room" was insufficient to create a hostile work environment; finding that an employee discovering a noose in his hard hat was insufficient to create a hostile work environment). Thirdly, Lone Star promptly investigated Plaintiff's concerns and took remedial action by implementing employee training on racial sensitivity and awareness in notetaking. Brown Declaration, at 4–6 ¶¶ 10-16.

Although Plaintiff raised various other incidents in her written complaint and during her deposition, there is no evidence that such incidents were both known to Lone Star and

based on race. The record only contains evidence supporting that Lone Star was aware of incidents raised in: (i) her alleged December 27, 2018 oral complaint (*see* Baker Aug. Deposition, at 131 ¶¶ 5-12, 160-63 ¶¶ 10-3 (limited to an incident allegedly occurring on December 27, 2018, unrelated to race, in which Plaintiff claims a coworker advised a client on how to file a complaint against Plaintiff)); (ii) her January 3, 2019 written complaint (*see* Internal Complaint, at LON0027); or (iii) included in the practice notes provided to Brown (Paulding "Helper" Note, at LON0187; Dannheim "Girl" Note; Martinez "Young Black Girl" Note). Accordingly, any such incidents may not be considered for purposes of determining whether Plaintiff was subjected to a hostile work environment because of her race.

As a result of the foregoing, Plaintiff's claim that she was subjected to a hostile work environment must be dismissed.

**3.    Lone Star was not required to accommodate, and did not discriminate on account of, Plaintiff's disabilities because they were not known to Lone Star during Plaintiff's employment.**

To prevail on her failure-to-accommodate claim, Plaintiff must show that "(1) [she] is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (quoting *Feist v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013)).

Plaintiff's failure to accommodate claim must be dismissed because there is no evidence to suggest that Plaintiff's alleged disabilities of depression and PTSD were known

15

to Lone Star during Plaintiff's employment. Although Plaintiff requested sick leave from January 22, 2019 through February 1, 2019, the doctor's note she provided in support of that request did not identify any disabilities or restrictions applicable to Plaintiff. *See* Doctor's Note. Plaintiff does not recall informing her supervisor at that time that she was suffering from depression or PTSD. Baker Aug. Deposition, at 62-63, ¶¶ 22-10. Brown, the individual who made the decision to terminate Plaintiff's employment, was unaware that she was suffering from any disabilities. Brown Declaration, at 6 ¶ 18. That Lone Star was unaware of Plaintiff's conditions aligns with Plaintiff's medical records, which indicate she was not diagnosed by her health care provider with: (i) depression until her final day of employment (while she was still out on sick leave), and (ii) PTSD until several months after her termination date. Exh. 25 (VA Medical Center "Problem List"); Baker Oct. Deposition, at 202-04 ¶¶ 9-3 (Plaintiff authenticating document, except that she maintains her initial diagnosis of PTSD was also on January 31, 2019 because "depression is a part of PTSD"). Moreover, Plaintiff herself denied having a disability on February 21, 2019, after her termination date. Inquiry, at LON0756 (stating "I do not have a disability").

Plaintiff has also failed to establish a *prima facie* case of disability discrimination under the ADA. To make a *prima facie* case, Plaintiff must establish that "(1) [she] has a disability or was regarded as disabled, (2) [she] was qualified for the job, and (3) [she] was subject to an adverse employment decision on account of [her] disability." *Jennings v. Towers Watson*, 11 F.4th 335, 344 (5th Cir. 2021). As described above, Plaintiff has produced no evidence that Lone Star was aware of any disabilities suffered by Plaintiff (or

16

that it regarded her as being disabled) during her employment. Accordingly, she cannot establish a *prima facie* case that Lone Star terminated her "on account of" any such disabilities.

**4.      Lone Star did not retaliate against Plaintiff because it informed her of its decision to terminate her employment before she engaged in protected activity, and Lone Star's reason to terminate, lack of funding, was not pretextual.**

"To establish a prima facie case of retaliation under . . . Title VII, a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist*, 730 F.3d at 454. "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, . . . which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive". *Id*. "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Id*.

Plaintiff may arguably establish a *prima facie* case for retaliation under Title VII because her employment terminated after she complained about racial harassment.

However, Plaintiff was a temporary grant employee, and Lone Star terminated her employment because the grant funding her position expired on December 31, 2018 without any alternative funding source available. *See* Brown Declaration, at 2-3 ¶¶ 4-9. All other

17

temporary employees funded by Plaintiff's grant were also terminated at the same time (if not earlier) for the same reason. Brown Declaration, at 3 ¶¶ 8-9. Moreover, Lone Star made its termination decision due to funding *before* Plaintiff submitted her first complaint of workplace harassment, making it impossible for Plaintiff's internal complaints to motivate Lone Star's termination decision, even in part. *Compare Id.* at 3 ¶ 9; Final Extension Notice (dated December 21, 2018); Jan. TWA (dated December 21, 2018 and signed December 26, 2018) *with* Baker Aug. Deposition, at 102 ¶¶ 12-23 (identifying December 27, 2018 as Plaintiff's earliest complaint); Internal Complaint, at LON0027 (dated January 3, 2019).

There is no evidence to suggest that Lone Star's reason for terminating Plaintiff is pretextual or that Plaintiff would not have been terminated but for her complaints. Accordingly, Plaintiff's retaliation claims under Title VII must be dismissed.

**5.    Plaintiff cannot establish a *prima facie* case of wrongful termination because of race.**

In order to prove discrimination absent direct evidence, a plaintiff begins by "show[ing] a prima facie case of intentional discrimination". *Eaton-Stephens v. Grapevine Colleyville Indep. Sch. Dist.*, 715 F. App'x 351, 355 (5th Cir. 2017). A plaintiff establishes a *prima facie* case of race discrimination by showing: (1) she belongs to a protected class; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position held or sought; and (4) the position was filled by someone outside the protected class, or those outside the protected class were treated more favorably. *Moreno v. Brownlee*, 85 F. App'x 23, 25 (5th Cir. 2004).

18

Plaintiff cannot establish a *prima facie* case of discrimination because Plaintiff has produced no direct or circumstantial evidence that her termination was motivated by race, Plaintiff's position was not backfilled because it was terminated due to lack of funding, and both other temporary employees under the same grant as Plaintiff (both outside Plaintiff's protected class) were also terminated for the same reason. Brown Declaration, at 3-4 ¶¶ 8-9, 6 ¶ 17.

Accordingly, Plaintiff's claim of race discrimination must be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims must be dismissed in their entirety.

Respectfully submitted,

*/s/ Christopher V. Bacon*
CHRISTOPHER V. BACON (attorney-in-charge)
State Bar No. 01493980
Federal ID No. 12670
PETER J. GOETSCHEL
State Bar No. 24116432
Federal ID No. 3485730
**VINSON & ELKINS L.L.P.**
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Telephone: 713.758.1148
Facsimile:  713.615.5014
E-Mail: cbacon@velaw.com
E-Mail: pgoetschel@velaw.com

**ATTORNEYS FOR DEFENDANT**

Certificate of Word Count: 4997

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of March 2022, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF System.

*/s/ Peter J. Goetschel*
Attorney for Defendant

## CERTIFICATE OF CONFERENCE

I hereby certify that on the 14th day of March 2022, I conferred with Plaintiff's counsel via phone to discuss this Motion. Plaintiff's counsel indicated that Plaintiff is opposed to the contents of the Motion and the proposed order attached hereto.

*/s/ Peter J. Goetschel*
Attorney for Defendant