**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CHLOE BAKER** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:20-cv-03870** |
| | § | |
| **LONE STAR LEGAL AID** | § | |
| | § | |
| ***Defendant.*** | § | |

**EXHIBIT INDEX**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| Exhibit No. | Description |
|---|---|
| 1 | Ernest Brown Declaration |
| 2 | Baker August Deposition Excerpts |
| 3 | Baker October Deposition Excerpts |
| 4 | April 2018 Temporary Worker Agreement |
| 5 | July 2018 Temporary Worker Agreement |
| 6 | October 2018 Temporary Worker Agreement |
| 7 | Final Extension Notice |
| 8 | January 2019 Temporary Worker Agreement |
| 9 | Internal Complaint |
| 10 | Paulding 'Helper' Note |
| 11 | Martinez 'Young Black Girl' Note |
| 12 | Dannheim 'Girl' Note |
| 13 | Investigation Notice |
| 14 | Doctor's Note |
| 15 | FMLA Paperwork Request |
| 16 | Termination Notice |

| **Exhibit No.** | **Description** |
|---|---|
| 17 | 460-2019-02226 EEOC Inquiry |
| 18 | 460-2019-02226 Activity Log |
| 19 | 460-2019-02226 Detail |
| 20 | EEOC Letter |
| 21 | 460-2020-03799 EEOC Inquiry |
| 22 | 460-2020-03799 EEOC Charge |
| 23 | 460-2020-03799 EEOC Notice of Dismissal |
| 24 | 460-2020-03799 Activity Log |
| 25 | VA Medical Center Problem List |

# EXHIBIT 1

## Ernest Brown Declaration

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CHLOE BAKER** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:20-cv-03870** |
| | § | |
| **LONE STAR LEGAL AID** | § | |
| | § | |
| ***Defendant.*** | § | |

**DECLARATION OF ERNEST W. BROWN, JR.**

I, Ernest W. Brown, Jr., pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am currently, and for the past seven years have been, the Deputy Director of Lone Star Legal Aid, a non-profit organization that provides legal services and representation to low-income individuals in 72 counties in Texas and 4 counties in Arkansas.

2. As Deputy Director, I am personally responsible for assisting the Chief Executive Officer with the day-to-day operations of Lone Star Legal Aid, including the handling of various personnel matters. Such personnel matters involve, among other things, approving for all employee hiring, promotion and firing decisions, enforcing the Lone Star Legal Aid anti-discrimination and anti-harassment policies, and investigating internal and external complaints of personnel misconduct.

3. I am also aware of, and am often required to make personnel decisions based on, what sources of funding are available to Lone Star Legal Aid at any given time. Lone Star Legal Aid receives federal and state funding, as well as funding from private donors. As an example, Lone Star Legal Aid typically receives funding from the Legal Services Corporation and the Texas Access to Justice Foundation. Lone Star Legal Aid also receives supplemental revenue from

various grants that external groups have awarded it on either a short-term or long-term basis. Each grant that Lone Star Legal Aid is awarded is normally associated with a specific project, or function, and grants applicable to specific projects, or functions may or may not overlap with one another during their respective effective periods. The total amount of revenue that Lone Star receives from grants can fluctuate greatly from month to month.

4.      As a result of its funding structure, Lone Star Legal Aid regularly employs both permanent staff, who are paid out of revenue received from long-term funding sources, and temporary contract or grant employees, who are paid through the use of short-term, grant-based funding.

5.      With respect to its temporary staff, once grant funding associated with a particular project or function expires or is withdrawn, and no alternative source of funding for that project or function is available, all temporary employees assigned to that project or function are typically terminated due to lack of funding. Similarly, if the terms of a grant are changed such that certain temporary positions within a particular project or function are no longer needed, all employees holding those positions are typically terminated for the same reason, even if the grant continues on new terms. Lone Star Legal Aid does not post temporary positions unless it also expects to receive a source of funding applicable to those positions.

6.      In the spring of 2017, the Texas Veteran Commission Project ("TVC") awarded Lone Star Legal Aid's Military Veterans Unit ("MVU") short-term grant funds to support veteran legal services from the Spring of 2017 through June 2018.  This grant was to provide additional legal services for Houston-based military veterans, their families, and survivors to help improve their quality of life. Because of funds associated with the TVC grant, Lone Star Legal Aid was

able to post several temporary employee positions in early 2018, including a Paralegal II temporary employee position.

7.      On or around March 29, 2018, I reviewed the resume and application of Chloe Baker as part of her application for that Paralegal II job posting and I directed Lone Star Legal Aid to extend Ms. Baker an offer of temporary employment for that position, beginning on April 2, 2018.  Ms. Baker accepted that offer.

8.      The Texas Veteran Commission Project funding did expire on June 30, 2018 as expected, however, Lone Star Legal Aid could continue funding Ms. Baker's, as well as two other temporary employees' (Betty Dannheim and Courtney Paulding) positions, through another grant available to the MVU. That grant (a Victims of Crime Act ("VOCA") grant provided through the Office of the Texas Governor) was expected to continue through December 31, 2018. As a result of the VOCA grant, I elected to renew Ms. Baker's and the other temporary employees' worker agreements for additional three-month periods, ending on September 30, 2018 and December 31, 2018 respectively, except that after the period ending September 30, 2018, Ms. Dannheim's temporary worker agreement was not renewed. Both Ms. Dannheim and Ms. Paulding are Caucasian.

9.      Lone Star Legal Aid was unable to identify an alternative source of funding for the MVU leading up to the expiration of the VOCA grant on December 31, and I decided that Lone Star Legal Aid would be required to terminate the temporary positions held by Ms. Baker and Ms. Paulding. However, I also found the idea of terminating those individuals' employment during the holidays to be distasteful, and elected to extend their temporary worker agreements until January 31, 2019. On December 21, 2018, I directed Lone Star Legal Aid to notify the two individuals of

my decision, and each individual was also informed that the additional thirty days would be the final extension or renewal of their employment arrangements with Lone Star Legal Aid.

10.     On or around January 3, 2019, I was forwarded a written complaint submitted by Ms. Baker raising several concerns regarding workplace interactions between herself and another secretary, Ms. Anna Martinez. The complaint also raised concerns related to Ms. Paulding's use of the term "helper" in a note, in reference to Ms. Baker. The next day, Ms. Baker raised another complaint related to Ms. Martinez's use of the phrase "young black girl" in a note, also in reference to Ms. Baker. Because I was out of town at the time, I asked the Director of Administration, Ms. Pamela Sotoodeh, to notify Ms. Baker that day that I had received her complaint and would schedule a meeting with her to discuss her concerns once I returned to the office.

11.     I was not, and am not, aware of any other complaints of harassment or discrimination submitted by Ms. Baker before her initial January 3, 2019 complaint.

12.     Upon my return to the office, I began investigating Ms. Baker's complaint. My investigations involved reviewing the notes that contained the concerning terms and interviewing Ms. Baker, Ms. Martinez, Ms. Paulding, and Ms. Sonia Lopez, the Directing Attorney of the MVU.

13.     The notes referenced by Ms. Baker included two practice notes created by Ms. Paulding and Ms. Martinez respectively, in which the employees made notes of meetings with Lone Star Legal Aid clients. The concerning terms were quoted statements of the clients in those meetings, referred to a Lone Star Legal Aid employee or employees as an attorney's "helper" in one case and a "young black girl" in another. In both cases, the use of the terms did not appear to originate from any Lone Star Legal Aid employee. Instead, the employees appeared to have included the terms in the practice notes in order to reflect statements made by the clients for the benefit of the clients' attorneys, as required by Lone Star Legal Aid policy.

14. During my interviews with Ms. Martinez, Ms. Paulding and Ms. Lopez, I asked them about the concerns Ms. Baker had raised in her complaint, including the notes and the workplace interactions. Each interviewee appeared to be surprised by Ms. Baker's allegations, and both Ms. Paulding and Ms. Martinez told me that they had thought they had a good working relationship with Ms. Baker. They also firmly disputed that the negative workplace interactions occurred as Ms. Baker described them in her complaint, and that they ever intentionally engaged in any form of harassment towards Ms. Baker. I found the witnesses to be credible.

15. On January 17, 2019, I interviewed Ms. Baker in order to discuss her concerns related to the notes and to her workplace environment. As I recall, Ms. Baker appeared to be primarily concerned with the practice notes, as opposed to the workplace interactions noted in her complaint. She also brought copies of the practice notes to share with me, as well as a third practice note made by Ms. Dannheim from October 2018, in which Ms. Dannheim quoted a client who appeared to refer to Ms. Baker as "girl." The third note appeared to raise the same concerns for Ms. Baker as the other two notes, but also appeared to have drafted in compliance with Lone Star requirements. Ms. Dannheim was also no longer employed by Lone Star as of the date of my interview with Ms. Baker.

16. Based on my interviews with the four individuals and my review of the relevant practice notes, I ultimately concluded that the complaints raised by Ms. Baker did not constitute unlawful harassment or discrimination. I provided Ms. Baker with a written response to that effect on January 31, 2019, which included additional context regarding my conclusion. I also directed Lone Star to establish training for paralegals in which employees would be counseled to maintain awareness of possible race-based connotations of terms when drafting practice notes. This training

was later established and all current employees with notetaking responsibilities have been required to participate in the course.

17. I also provided Ms. Baker a notice that her Temporary Worker Agreement was terminating that day, in accordance with the decision she had been notified of on December 21, 2018. The other MVU temporary employee who had been under the VOCA grant before its expiration received a similar notice-and was also terminated that day. The associated positions were not then backfilled.

18. Although I was aware that Ms. Baker requested paid sick leave through her final day of employment, I was unaware of the reason that prompted her request for sick leave. At no point during Ms. Baker's employment did she or anyone else inform me that she may be suffering from any form of physical or mental disability, including either depression or post-traumatic stress disorder. I was also unaware of any reason to believe or suspect that she might be suffering from any form of physical or mental disability at that time.

19. I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on the 15th day of March 2022.

Ernest W. Brown, Jr.

# EXHIBIT 2

## Baker August Deposition Excerpts

**In the Matter Of:**

*CHLOE BAKER vs*

*LONE STAR LEGAL AID*

---

*CHLOE BAKER*

*August 27, 2021*

---



recall or not?

Q. Had any healthcare provider ever indicated that you're unfit to work after termination?

A. Oh, yes. I think I said yes.

Q. I asked who?

A. Oh, and that's when we got into all of that. Okay.

Q. Do you know when they said that?

A. I do not recall.

Q. All right.

MR. GOETSCHEL: I am handing the court reporter a document. Please mark this as Defendant's Exhibit No. 3.

(Exhibit 3 marked)

THE WITNESS: I'm going to come get it. Please don't throw it.

Q. (By Mr. Goetschel) Please take a minute to review this document, and let me know when you've fully reviewed it.

A. Okay.

Q. Do you recognize this document?

A. Yes.

Q. What is it?

A. It is my certificate of visit on the day that I lost my mind.

Q. Is it fair to say that this is a doctor's note?
A. Uh-huh, yes.
Q. Is it a complete and accurate copy of the doctor's note on the day, as you say, that you lost your mind?
A. Yes.
Q. Is it true that Dr. Parvathy Nair provided you this document?
A. Yes.
Q. Do you recall what reasons she gave before she issued this document to you?
A. I was so stressed out I was physically unable to really do anything, let alone complete tasks of being a paralegal for Lone Star Legal Aid. Maybe she as a doctor saw some physical symptoms that I can't describe; but yeah, she immediately told me, Do not go to work. You're too stressed out. Like I could have had a heart attack with the stress basically. And to go home and get some rest.
Q. Did she provide any kind of medical evaluation prior to issuing this note?
A. So she is my doctor -- she was my doctor before this, yes. She's my doctor on record.
Q. When did you begin seeing Dr. Nair?
A. I've never seen her before this like as a

therapy session. It was a simple checking in to the Houston VA. I live in Houston now. Just letting you know I'm Chloe. I'm a veteran. Hi. Nice to meet you.

So they gave me a physical doctor, you know. They just give you doctors just to make sure that -- you know, for health insurance. You have a doctor. I'm sure you get checkups. And that's how she -- she was assigned to me through the system basically.

Q. Had you seen her before January 22nd, 2019 --

A. Not --

Q. -- in person?

A. Not as a patient, not as an official patient, no. Just in processing knowing that, okay, if I ever need psychiatric help, that would be my psychiatric doctor because she was assigned to me through the Houston VA system because of my benefits.

Q. And during the meeting in which she filled out this doctor's note, did she indicate that you may be suffering from PTSD or depression?

A. I don't recall.

Q. Did you provide this note to someone at Lone Star Legal Aid?

A. Someone wrote this.

Q. Did you tell them anything when you provided

them with this note?

A. I told them that my doctor said, Go sit down for ten days. That's what the doctor said.

Q. Is that all you told them?

A. Oh, I told her to send over my accrued sick leave so I could see if I was going to be getting paid while I had to sit out for ten days.

Q. Did you indicate to Ms. Lopez that you may be suffering from depression or PTSD at that time?

A. I don't recall.

Q. Did you indicate whether you may need reasonable accommodation?

A. So reasonable accommodations, yeah, my sick leave. But the accommodation that -- are you referring to the older exhibit, Exhibit 2? Is that what you're referring to?

Q. No. I'm just asking if you told Ms. Lopez that you needed some kind of accommodation?

A. Oh, yeah, of course. I'm missing for ten days.

Q. And those ten days were provided. Is that correct?

A. No.

Q. So you were not on sick leave?

A. No. Never got paid for it.

Q. Did you arrive at work during that period?

A. No.

Q. Is it fair to say that you were on leave during that period, regardless of whether it was paid or not?

A. I was not on leave. I was medically bed rest -- on medical bed rest. I wasn't on vacation. I was like on medical bed rest.

So that counts as leave, too? If that counts as leave, then I would say. But, like, if medically doesn't count, then no.

Q. I'd like to return to Defendant's Exhibit No. 2. So this is the amended complaint, Ms. Baker.

I would like to draw your attention to the fourth page of the complaint at section 4A. Please let me know when you're there.

A. Okay. I'm here.

Q. Do you see where February 20th, 2019 and May 21st of 2020 are identified?

A. Yeah.

Q. Are those two dates identified as the dates on which you filed a charge against Lone Star Legal Aid?

A. Yes.

Q. Are those two dates accurate?

A. Yes.

Q. Are there any other dates on which you submitted a charge to the EEOC besides those two days?

And in the conversation that we had face-to-face after she wrote this note and e-mailed it to me, I went and had a conversation with her face-to-face; and that's what we concluded from the conversation. She assumed it was me because they referred to the person as a girl. She assumed it was me, added me to the notes; and then I had to go in the notes and defend myself and say, Get this off of my task. I have nothing to even do with the applicant. This is not even assigned to me. I don't even know why my name is coming up because I'm not girl.

Q. And then after this is it true that you raised a complaint?

A. A few months. Not because of this, a few months.

Q. Okay.

A. The formal complaint, a few months, yeah.

Q. Do you recall when you raised that formal complaint?

A. The formal complaint?

Q. Just as you recall.

A. I can tell you. The formal complaint was on December 27th, uh-huh, yep.

Q. Now, you also say on October 15th Ms. Dannhei did say "run girl run." Can you just describe where

A. I wasn't done with my answer. I didn't even give you an answer.

Q. That's okay.

A. I'm going to use the restroom real quick. Since we're done with that answer, I'm going to run to the restroom real quick.

Q. All right.

MR. GOETSCHEL: Go off the record.

THE VIDEOGRAPHER: We're off the record. The time is 4:06 p.m.

(Recess taken)

THE VIDEOGRAPHER: Okay. We're back on the record. The time is 4:11 p.m.

A. While we're on record, I just want to go on the record and say please do not interrupt me when I'm answering my questions. I know earlier before we started this, we said we wouldn't interrupt each other. I just don't think that that was appropriate for you to tell me I was done with my answer. It's my right to answer your questions.

Q. (By Mr. Goetschel) That's fine.

We were just discussing on December 27th, 2018 that you had raised a complaint after you say Ms. Martinez instructed a client to file a complaint against you. What issues did you note during that

formal complaint?

A. I talked about the harassment. I talked about the manner in which I was being treated, the hostility. I talked about all the instances of what was going on in the office, the interoffice dynamics. I talked about -- really, I really talked about what happened on December 27th.

Q. Was that the only specific incident you raised during that complaint?

A. During that complaint because things happened after the complaint was filed. So that was as far as what had happened up to that date. Not anything that happened afterwards but up to that date.

Q. Who were you having this conversation with again?

A. Sonia Lopez.

Q. Was anyone else present during that conversation?

A. No.

Q. What did Ms. Lopez say in response to you on that call?

A. That she was going to forward it to Ernest Brown, and they were going to investigate.

Q. Is it your understanding that she did, in fact, forward that to Mr. Brown?

Apart from the remote location's equipment and the breaks and lunch, which you do not want to speculate as to motivation, are there any other instances of harassment or discrimination that you experienced at Lone Star Legal Aid?

A. I told you about them trying to get everyone to file a complaint against me, right? We didn't really talk about that. You cut me off. So I didn't get to tell you the last part.

Q. There was a point today where we discussed people trying to file a complaint on you.

A. Yeah.

Q. I believe that was actually included in your complaint at paragraph 4.

A. Yeah. But I didn't get to finish because you cut me off. So let me go back and finish that story because that's a big story, too, and very important to my complaint.

Yeah. So everyone who works for Lone Star Legal Aid has the ability to go into Practice Manager and see what's going on in the case. So on this day -- on this day I was -- maybe I tried to take a break. Who knows what was going on. But there was their number on the door, and that was speculation. So you can strike that from the record because I don't know if I was

really on a break.

On this day the applicant called the number. It went to Anna's desk. And if she would have read it, she would have saw that the case was closed. That was the status of the case. The case was closed. There was nothing that could have been done. We had already decided that the case was closed.

Actually, she is the one who was supposed to e-mail the letter saying, Hey, your case has been closed. So maybe she didn't do her job and maybe that's why the applicant didn't know that his case was closed.

But she could have easily if she was doing her job, if she was performing her duties in a competent and efficient manner to conduct herself in an appropriate manner while fulfilling the duties of her intake specialist position, she could have told the client, Hey, your case is closed.

Instead she is antagonizing the client telling the client, Take a picture of the door, this, that and the third. I don't know if that's in the notes or not. But, again, I can't capture everything that happened, you know. So she's telling them to do all these things, doing everything besides giving the client proper services that she could have easily gave them by just looking at her computer and saying, Hey, your case

is closed.

Instead she goes as far as to try and convince them to file a complaint against me. So I say the case is closed. So I've already had conversations with the client. The client already knows who I am, right?

So when this happens, the client immediately calls me because, like I said, I've been using my personal phone. The client immediately calls me and is like, Hey, I don't know what's going on but I just had a really weird interaction. I called the number on your door and this, that and the third has happened. They're trying to make me file a complaint against you. I don't want to do that because that's inaccurate. That's not what I was calling for. I was calling to get a status on what's going on with my case. But instead your co-workers are trying to convince me to file a complaint against you.

Q. You did not personally witness this conversation between the applicant and Ms. Martinez. Is that correct?

A. No. I read it on Practice Manager, and the client told me about it.

Q. And so your whole description is also speculative except to the extent it's included in

Practice Manager or what you relayed from what the client said?

A. Yeah. It's in Practice Manager.

Q. Okay. Apart from that instance, which is now discussed, did you experience any other specific instances of harassment or discrimination at Lone Star Legal Aid?

A. I told you about them sexually harassing me and saying I kiss butt.

Q. Did you consider the kiss butt comment to be sexual harassment, or is that a different reference?

A. No. Yeah. It's definitely sexual harassment.

Q. Did you include sexual harassment in your allegations?

A. I'm not sure. I think that's it.

Q. Are you sure?

A. I believe that's it.

MR. GOETSCHEL: I will ask what the time is because I think we're close to 5:00 p.m.

THE VIDEOGRAPHER: 5:05.

MR. GOETSCHEL: 5:05. I think in that case we should go off the record right now.

THE VIDEOGRAPHER: Okay. We're off the record. The time is 5:05 p.m.

(Recess taken)

# EXHIBIT 3

Baker October Deposition Excerpts

**In the Matter Of:**

*BAKER vs*

*LONE STAR LEGAL AID*

---

*CHLOE BAKER*

*October 07, 2021*

---



**hire, just different -- different ways that they would pay me. But I was a permanent hire.**

Q. So you're saying that your employment contracts or temporary worker agreements contained end dates for payments?

**A. No. I said that I was a permanent hire and that sometimes they would switch around grants. Even though I wasn't working on that grant, that's how they would pay me, with that grant. And they would just find different grants to pay me with even if I wasn't working on the grant.**

**But I was a permanent hire. That's what I'm saying.**

Q. Were you ever subject to an employment contract or temporary worker agreement with a January 31st, 2019 end date?

**A. Can you repeat that question, please?**

Q. Were you ever subject to an employment contract or temporary worker agreement with a January 31st, 2019 end date?

**A. Well, I was a permanent hire, so --**

MR. GOETSCHEL: All right. I am handing the court reporter a document. Please mark this document as Defendant's Exhibit Number 12.

(Exhibit Number 12 was marked.)

THE REPORTER: (Indicating.)

**THE WITNESS: Please don't throw things at me. If you just set it down I can grab it. I just don't like it --**

THE REPORTER: Okay.

**THE WITNESS: -- if you throw things at me.**

THE REPORTER: (Indicating.)

Q. (By Mr. Goetschel) Ms. Baker, please take a minute to review this document and let me know when you've finished reviewing it.

**A. (Reviewing document.)**

Q. Ms. Baker, have you finished reviewing the document?

**A. No, I have not.**

Q. It looks as though you're taking notes as opposed to reviewing the documents.

**A. I'm doing both. Please do not interrupt the way that I process what you've just handed me.**

**This is my first time seeing this, and I'm not sure if this is proper or the right thing so I'm going to note because I just want to review my document. So please don't interrupt me as I review my document. Thank you.**

(Reviewing document.)

Q. Ms. Baker, I haven't asked you any question other than to review the document.

**A. I understood your question. I was reviewing the document as you asked me to do so.**

Q. Ms. Baker, you're taking notes.

**A. Right. From the document. This is my way of reviewing it. Please don't interrupt me as I review my document.**

**Thank you so much.**

(Reviewing document.)

Okay. I've reviewed the document.

Q. Do you recognize this document?

**A. I don't recognize it. That's why it took me so long to review.**

Q. Have you seen this document before?

**A. I don't recall.**

Q. Is it true that this document is a Personnel Action Memo and a Temporary Worker Agreement between you and Lone Star Legal Aid?

**A. That goes back to my last answer of they would just put me on random grants even though I was a permanent hire.**

**THE WITNESS: I'm sorry. What was that, Mr. Christopher -- Mr. Christopher Bacon? What did you say? I didn't hear you.**

Q. (By Mr. Goetschel) Ms. Baker, is that your signature --

**A. Because we're on the record --**

Q. -- on this document?

**A. -- so I just want everything to be on the record. We can't use notes --**

Q. Ms. Baker, don't interrupt me.

**A. -- when you have a lawyer.**

**I was still speaking. I was -- because Christopher was speaking.**

**THE WITNESS: Did you get what Christopher said?**

MR. BACON: No, because I was -- I was giving him advice and --

**THE WITNESS: You were giving him advice?**

MR. BACON: -- and it's confidential.

**THE WITNESS: Oh, okay.**

MR. BACON: And it's none of your business.

**THE WITNESS: Oh, it's none of my business what you're speaking about.**

MR. BACON: Yeah. You just need to answer his question.

**THE WITNESS: I just need to answer his question.**

MR. BACON: Yeah.

**THE WITNESS: Got it.**

Q. (By Mr. Goetschel) That's correct. I will ask you questions and you will answer them.

**A. Well, I didn't know if it was Christopher's question. This is the first time I'm hearing of this.**

**THE WITNESS: You weren't here last time. So I'm just trying to see how it goes.**

Q. (By Mr. Goetschel) If Christopher would ask you a question --

**A. Uh-huh.**

Q. -- he will ask you directly.

**A. Oh, so -- because I didn't know. I thought he was asking me a question, and that's why I asked him to repeat it louder.**

**So when I will know when Christopher is asking me a question or when he's advising you? How will I know the difference?**

Q. When he addresses you.

**THE WITNESS: Well, how will you address me?**

**A. How will Chris --**

Q. (By Mr. Goetschel) Like a -- like a normal person.

**A. Like a normal person versus what? Versus what?**

**How else would he address me, versus -- a normal person versus what?**

Q. Ms. Baker, is your signature at the bottom of each page?

**A. I'm still just trying to understand how this is going today so I won't get confused.**

Q. Ms. Baker, are you refusing to answer that question?

**A. I'm not refusing to answer anything. I'm trying to see how this is going to go today.**

Q. Ms. Baker, answer the question.

**A. What is the question?**

Q. Is your signature at the bottom of each page of this document?

**A. No, it is not at the bottom. The last signature is the "Executive Approval" on the first one, and on the bottom of the second one it's also the "Deputy Director or Designee," I think Ernest's signature. That's at the bottom of the page.**

Q. Is your signature next to the word "Employee" and "Worker Signature" at the bottom of each of these pages?

**A. Yes, that is -- that looks to be my signature.**

(Sotto voce discussion.)

**THE WITNESS: Was that for me or was that**

Q. When did Ms. Christa Mills make that statement to you?

**A. As I was signing. As we were preparing to sign.**

Q. Is that on April 4th, 2018?

**A. It might have been. Or around that time.**

MR. GOETSCHEL: I am handing the court reporter another document. Please mark this as Defendant's Exhibit Number 13.

(Exhibit Number 13 was marked.)

THE REPORTER: (Indicating.)

**THE WITNESS: Thank you.**

Q. (By Mr. Goetschel) Please take a minute to review this document and let me know if you recognize this document.

**A. (Reviewing document.)**

**Okay. I have reviewed the document.**

**And before you ask your next question I'm going to use the restroom.**

MR. GOETSCHEL: Let's go off the record.

THE VIDEOGRAPHER: The time is 12:23 p.m. We are off the record.

(Recess from 12:23 until 12:27.)

THE VIDEOGRAPHER: The time is 12:27 p.m. and we are back on record.

Q. (By Mr. Goetschel) Ms. Baker, do you recognize Defendant's Exhibit Number 13?

**A. I am not sure if I recognize it. It kind of looks like the last exhibit, too.**

Q. Is it accurate to say that this document is a Personnel Action Memo and Temporary Worker Agreement between you and Lone Star Legal Aid?

**A. Where do you see the Temporary Worker Agreement part? I see Lone Star Legal Aid Personnel Action Memo.**

Q. On the second page at the header.

**A. Oh.**

Q. Is that an accurate description of this document?

**A. It's a personal action memo -- Personnel Action Memo. Excuse me. Personnel.**

Q. Is your signature at the bottom of each page of this document beside "Worker" and "Worker Signature" -- I'm sorry.

**A. No.**

Q. "Employee" and "Worker Signature."

**A. "Employee" and "Worker Signature." What was the question with that?**

Q. Is your signature beside of each of those words at the bottom of this document?

**A. I'm sorry. Repeat the whole question. It was**

**broken up. I don't understand the question.**

Q. Did you sign each page of this document next to "Employee" and "Worker Signature"?

**A. Okay. It looks to be my signature.**

Q. Do you know when you signed this agreement?

**A. I'm not sure.**

Q. Is it true that this agreement contains an end date of September 30th, 2018 in the "Employment Change" section on the first page?

**A. Repeat the question, please.**

Q. Is it true that this Personnel Action Memo and Temporary Worker Agreement contains an end date of September 30th, 2018 on the first page?

**A. That was not my end date, no. That's not my end date. My end date was -- actually, my termination date was January 31st, I believe. That was my ending date.**

Q. Does this agreement contain an end date of September 30th, 2018?

**A. Oh, and that goes back to what you asked me if this is accurate. That's not an accurate end date.**

Q. But it does contain it?

**A. What is "it"?**

Q. The end date.

**A. The end date was January 31st, so, no, it does**

THE VIDEOGRAPHER: The time is 12:40 p.m. We're back on the record.

MR. GOETSCHEL: I am handing the court reporter a document. Please mark this as Defendant's Exhibit Number 14.

(Exhibit Number 14 was marked.)

THE REPORTER: (Indicating.)

**THE WITNESS: Thank you.**

Q. (By Mr. Goetschel) Ms. Baker, please take a minute to review this document and let me know if you recognize it.

**A. (Reviewing document.)**

**Okay. I reviewed.**

Q. (By Mr. Goetschel) Do you recognize this document?

**A. Vaguely.**

Q. Is your signature at the bottom of each page of this document next to the words "Employee" and "Worker Signature"?

**A. Those are my signatures, but this document isn't accurate.**

MR. GOETSCHEL: I am handing the court reporter a document. Please mark this as Defendant's Exhibit Number 15.

(Exhibit Number 15 was marked.)

THE REPORTER: (Indicating.)

**THE WITNESS: Thank you.**

Q. (By Mr. Goetschel) Please take a minute to review this document.

**A. (Reviewing document.)**

**I've reviewed.**

Q. (By Mr. Goetschel) Do you recognize this document?

**A. Yes. I was cooperating as is stated at the bottom, "Thank you for your cooperation" for exhausting the grants.**

**Even though I wasn't working on it, so that they would pay me different ways, even though I was a permanent hire when I was first hired.**

**So, yes, I recognize this because I was cooperating.**

**I think Ernest Brown's signature is on it, too.**

Q. It says all that on this document?

**A. What was the question?**

Q. What you just described, it's on this document somewhere?

**A. Yeah, "Thank you for your cooperation," and Ernest Brown's signature is on this document, yes.**

Q. I see. Do you recall when you first received

this notice?

**A. I don't recall.**

Q. Do you believe that it may have been around December 21st, 2018?

**A. It may have been.**

Q. But you're not sure; is that correct?

**A. What was the question? What's correct?**

Q. You're not sure if you received this notice around December 21st, 2018?

**A. I received this notice.**

Q. Was it around that date?

**A. I cannot pinpoint the date because it also says December 27, December 21st. So there's many dates on this document. I can't -- this was almost two or three years ago. I can't tell you exactly when I got this document in my hands. There's multiple dates on the document, too.**

**Does that answer your question?**

Q. Yes.

MR. GOETSCHEL: I am handing the court reporter another document. Please mark this as Defendant's Exhibit 16.

(Exhibit Number 16 was marked.)

THE REPORTER: (Indicating.)

**THE WITNESS: Thank you.**

Q. (By Mr. Goetschel) Please take a minute to review this document and let me know when you've finished reviewing.

**A. (Reviewing document.)**

**I've reviewed.**

Q. Do you recognize this document?

**A. Do I recognize this document? Kind of, because you just handed me about three or four of them that look exactly like it. So I don't know if its familiarity or if it's just that I've just seen them four or five different times, too, because you you've handed me similar documents.**

Q. Is your signature at the bottom of each page of this document next to the words "Employee" and "Worker Signature"?

**A. Next to and on top of, yes.**

Q. Is it true that you signed these documents on December 26th of 2018?

**A. I might have.**

Q. Do you recall whether you did or not?

**A. I might have.**

(Reviewing document.)

Yeah, the office was known -- especially our supervision was known for making us backdate and frontdate different things. So there's really no

telling if -- like when I signed the papers.

So it really just depended on the grant and what was needed at that time, too.

**THE WITNESS: I'm sorry. Was that for me? I didn't hear what you said.**

MR. GOETSCHEL: No, it was not for you, Ms. Baker.

**THE WITNESS: Oh, okay.**

MR. GOETSCHEL: I am handing the court reporter another document. Please mark this as Defendant's Exhibit Number 17.

(Exhibit Number 17 was marked.)

THE REPORTER: (Indicating.)

**THE WITNESS: Thank you.**

Q. (By Mr. Goetschel) Please take a moment to review and let me know when you're finished reviewing.

**A. (Reviewing document.)**

**I have reviewed.**

Q. Do you recognize this document?

**A. It's a partial document. I'm not sure where it came from, like which document it came from. I just know that it's partial.**

Q. Partial of what?

**A. I'm not sure. I just know I've seen this before and it's a partial.**

Q. Is it accurate to say that this is a list of conditions that has been diagnosed by the VA, your healthcare provider?

**A. It is accurate to say that it is partial of a problem list from my VA health provider, confidential.**

Q. I would direct your attention to the final box on the document. This is the furthest down on the page.

Do you recall whether January 31st of 2019 is the first time you were diagnosed with depression after the end of your employment with Lone Star Legal Aid?

**A. Was this the first time that I was diagnosed? If that's what my file says, I would assume.**

Q. In the box above that, do you recall whether May 22nd, 2019 is the first time you were diagnosed with PTSD after the end of your employment with Lone Star Legal Aid?

**A. You said -- what was the question? If I was what? I'm sorry. I can't hear you. You're talking kind of low.**

Q. In the box above that do you recall whether May 22nd, 2019 is the first time you were diagnosed with PTSD after the end of your employment with Lone Star Legal Aid?

**A. Well, no. Because depression is a part of**

**PTSD. So when I was diagnosed with depression, that was my -- PTSD being dormant. Does that answer your question?**

Q. Yes. Dr. Nair is identified as the healthcare provider who diagnosed you with PTSD in that second box.

How long have you been seeing Dr. Nair as a healthcare provider?

**A. I'm not sure. Again, this is a partial, so it doesn't have all that information on this partial.**

Q. What do you remember for the length of that relationship?

**A. It's still ongoing. I still have to go to therapists and psychiatrists and psychologists and counseling and take medication for the harassment that I endured at Lone Star Legal Aid.**

**So to answer your question, it's ongoing. I still have appointments on the calendar with her.**

Q. Do you remember when those appointments began?

**A. You would have to check the records.**

Q. Do you believe that Dr. Nair is a competent healthcare provider?

**A. Yes.**

Q. Do you believe that Dr. Nair is a trustworthy healthcare provider?

**A. Yes.**

# EXHIBIT 4

April 2018 Temporary Worker
Agreement

# LONE STAR LEGAL AID
# PERSONNEL ACTION MEMO

| Date | April 4, 2018 |
|---|---|

| Name: Baker, Chloe M. | | Title: Paralegal II | | | | | |
|---|---|---|---|---|---|---|---|
| Exempt ☐ | Non Exempt X | Office/Unit/Dept.: Texas Veterans Commission | | | | | |
| Social Security # | 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 | Male | | Female | X | Date of Birth | 06/18/1996 |
| Hire Date | April 2, 2018 | Entry Level Date: | | | Re-hire Date: | | |

**Employment Change**

| New Hire | x | Full Time | x | Part Time | | Contract | | Grant | X | Temporary | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Transfer | | Transfer to: | | | | Contract/Grant Name: | | | | | |
| | | Transfer From: | | | | Beginning Date | *04/02/2018 | | | | |
| Position/Title Change | | | | | | Ending Date | 06/30/2018 | | | | |

**Compensation**

| Annual Salary | $ 28,000.00 | Hourly Rate: | | Avg. Hrs Work | | 40 | |
|---|---|---|---|---|---|---|---|
| Annual Increment | Old Salary: | New Salary: | | Step | 1 | Retro | Yes ☐ / No X |
| Funding Source: | *The Veterans Commission New: | | | Effective Date | 04/02/2018 | | |
| Funding Source: | Change: | | | Effective Date | | | |

**Termination of Employment**

| Reason for Leaving | Quit with Notice | | Quit without Notice | | Laid Off | | Terminated | |
|---|---|---|---|---|---|---|---|---|
| | End of Assignment | | | | | | | |
| Last Day Worked | | | | | Eligible for Re-hire | | Yes ☐ | No ☐ |
| Benefits Given | | | | | | | | |

**COMMENTS:**

*Ms. Chloe M. Baker's duration of employment with Lone Star Legal Aid (LSLA) is subject to the continuation of the Texas Veteran Commission Project extension and/or renewal tied to this position. Ms. Baker should not expect future employment at the end of the relevant grant term. Under her course of employment with LSLA, she will be entitled to leave and fringe benefits which includes group medical insurance, and 403(b) when eligible.

Employee: [signature] Date: 4/4/18

Executive Approval: [signature] Date: 6/22/18

**HUMAN RESOURCES**

HRB Created: HRB Entered: ______________ Payroll Received: ______________

0114



# Lone Star Legal Aid
## TEMPORARY WORKER AGREEMENT
**(Non-Exempt)**

**WORKER'S NAME: Baker, Chloe M.**

**Social Security #: XXX-XX-6409 Funding Source: Texas Veteran Commission**

**ASSIGNMENT**

As a Temporary worker with Lone Star Legal Aid you will be asked to perform the following job duties: Paralegal II Your assignment will be in the following Lone Star Legal Aid Office: **Houston Branch Office**. This assignment will start on the following date: **April 2, 2018** and end on the following date: **June 30, 2018**. The Texas Veteran Commission Project Director of the above Lone Star Legal Aid office will assign your work duties. There is no guarantee of a minimum number of work hours or work days during the term of this agreement. This agreement may be cancelled with or without notice -- with or without cause.

**COMPENSATION**

You will be paid pursuant to the LSLA **Paralegal II** Salary Schedule **Step 1, $28,000.00.** You will be paid semi-monthly (on the 15th and last working day of the month). State and federal taxes will be withheld from your check.

**BENEFITS**

As a Contract employee temporary worker you are not a regular LSLA employee. However under the terms of this agreement, you will be entitled to leave benefits including annual, sick and personal business leave and holiday pay. You will be also entitled to fringe benefits which includes group medical insurance, life insurance, parking, and 403 (b) when eligible.

**POLICIES AND PROCEDURES**

As a temporary worker, you are expected to follow all LSLA policies and procedures. In the course of this assignment you may be working with client related information. Such information must be treated as confidential and may not be used for any purposes outside of LSLA, divulged to others, or used for personal benefit at any time or in any manner.

**ACCEPTANCE OF OFFER**

There is no guarantee for further work after this assignment period ends. This relationship is temporary and voluntary. Either party may terminate the work relationship at any time, with or without notice, with or without cause or reason.

I agree to the above-stated terms and conditions:

[signature] Worker Signature — 4/4/18 Date

**Approval**

[signature] Project Manager or Unit Manager or Supervisor — April 4, 2018 Date

[signature] Deputy Director or Designee — 6/22/18 Date

**Lone Star Legal Aid, 1415 Fannin Street, Houston, Texas 77002**
Offices in Beaumont, Belton, Bryan, Clute, Galveston, Houston, Longview, Nacogdoches, Paris, Texarkana, Tyler, Waco

# EXHIBIT 5

## July 2018 Temporary Worker Agreement

# LONE STAR LEGAL AID
# PERSONNEL ACTION MEMO

| Date | 08/02/2018 |
|---|---|

| Name: **Baker, Chloe** | | Title: **Paralegal II** | | | | | |
|---|---|---|---|---|---|---|---|
| Exempt | Non Exempt X | Office/Unit/Dept.: **VOCA Grant- MVU Houston Branch Office** | | | | | |
| Social Security # | 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 | Male | | Female | x | Date of Birth | 6/18/1996 |
| Hire Date | **04/02/2018** | Entry Level Date: | | | | Re-hire Date: 07/01/2018 | |

**Employment Change**

| New Hire | | Full Time | X | Part Time | | Contract | | Grant | X | Temporary | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Transfer | | Transfer to: | | | | Contract/Grant Name: JCS/VOCA | | | | | |
| | | Transfer From: | | | | Beginning Date | ****07/01/2018** | | | | |
| Position/Title Change | | | | | | Ending Date | **09/30/2018** | | | | |

**Compensation**

| Annual Salary | $31,000.00 | Hourly Rate: | | Avg. Hrs Work | | | **40** | |
|---|---|---|---|---|---|---|---|---|
| Annual Increment | Old Salary: | New Salary: | | Step | **2** | Retro | Yes ☐ | No X |
| Funding Source: | TEXAS OOG | New: | | Effective Date | 07/01/2018 | | | |
| Funding Source: Change: | | | | Effective Date | | | | |

**Termination of Employment**

| Reason for Leaving | Quit with Notice | | Quit without Notice | | Laid Off | | Terminated | |
|---|---|---|---|---|---|---|---|---|
| | End of Assignment | | | | | | | |
| Last Day Worked | | | | | Eligible for Re-hire | | Yes ☐ | No ☐ |
| Benefits Given | | | | | | | | |

**COMMENTS:**

**Ms. Chloe Baker's duration of employment with Lone Star Legal Aid is subject to the continuation of the VOCA'S Grant's (MVU/Houston) extension and/or renewal tied to this position. Ms. Baker should not expect future employment at the end of the relevant grant term. Under her course of employment with LSLA, she will be entitled to leave benefits and fringe benefits which includes group medical insurance and life insurance, and 403 (b) when eligible.

Employee: [signature] Date: 8/2/18

Executive Approval: [signature] Date: 8/2/18

**HUMAN RESOURCES**

HRB Created: 08/01/2018 HRB Entered: ________ Payroll Received: [initials] 8/6/18

0114

LON0059



# Lone Star Legal Aid
## TEMPORARY WORKER AGREEMENT
**(Non-Exempt)**

**WORKER'S NAME: BAKER, CHLOE M.**

**Social Security #: 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** **Funding Source: TEXAS OOG**

**ASSIGNMENT**

As a Temporary worker with Lone Star Legal Aid you will be asked to perform the following job duties: **Paralegal 2**. Your assignment will be in the following Lone Star Legal Aid Office: **MVU/Houston Branch Office**. This assignment will start on the following date: **July 1, 2018** and end on the following date**: September 30, 2018.** The VOCA's Project Director and Managing Attorney of the above Lone Star Legal Aid office will assign your work duties. There is no guarantee of a minimum number of work hours or work days during the term of this agreement. This agreement may be cancelled with or without notice -- with or without cause.

**COMPENSATION**

You will be paid pursuant to the LSLA **Paralegal 2** Salary Schedule Step 2 **$31,000.00.** You will be paid semi-monthly (on the 15th and last working day of the month). State and federal taxes will be withheld from your check.

**BENEFITS**

As a Contract employee temporary worker you are not a regular LSLA employee. However under the terms of this agreement, you will be entitled to leave benefits. This includes annual, sick and personal business leave and holiday pay; you will be also entitled to fringe benefits which includes group medical insurance, life insurance, and 403 (b) when eligible.

**POLICIES AND PROCEDURES**

As a temporary worker, you are expected to follow all LSLA policies and procedures. In the course of this assignment you may be working with client related information. Such information must be treated as confidential and may not be used for any purposes outside of LSLA, divulged to others, or used for personal benefit at any time or in any manner.

**ACCEPTANCE OF OFFER**

There is no guarantee for further work after this assignment period ends. This relationship is temporary and voluntary. Either party may terminate the work relationship at any time, with or without notice, with or without cause or reason.

I agree to the above-stated terms and conditions:

[signature] 8/2/18

Worker Signature Date

**Approval**

[signature] August 2, 2018

Project Manager or Unit Manager or Supervisor Date

[signature] 8/3/18

Deputy Director or Designee Date

**Lone Star Legal Aid, 1415 Fannin Street, Houston, Texas 77002**
Offices in Angleton, Beaumont, Belton, Bryan, Galveston, Houston, Longview, Nacogdoches, Paris, Texarkana, Tyler, Waco

LON0060

# EXHIBIT 6

October 2018 Temporary Worker Agreement



# LONE STAR LEGAL AID
# PERSONNEL ACTION MEMO

| Date | September 27, 2018 |
|---|---|

| Name: Baker, Chloe | | Title: Paralegal II | | | | | |
|---|---|---|---|---|---|---|---|
| Exempt | Non Exempt X | Office/Unit/Dept. : MVU Houston Branch Office | | | | | |
| Social Security # | 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 | Male | | Female | X | Date of Birth | 6/18/1996 |
| Hire Date | 10/01/2018 | Entry Level Date: | | Re-hire Date: | | | |

**Employment Change**

| New Hire | | Full Time | X | Part Time | | Contract | X | Grant | | Temporary | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Transfer | | Transfer to: | | | | Contract/Grant Name: | | | | | |
| | | Transfer From: | | | | Beginning Date | | 10/01/2018 | | | |
| Position/Title Change | | | | | | Ending Date | | 12/31/2018 | | | |

**Compensation**

| Annual Salary | $31,000.00 | Hourly Rate: | | Avg. Hrs Work | | 40 | |
|---|---|---|---|---|---|---|---|
| Annual Increment | Old Salary: | New Salary: | | Step | 2 | Retro | Yes / No ☐ |
| Funding Source: New: | | | Effective Date | 10/01/2018 | | | |
| Funding Source: Change: | | | Effective Date | | | | |

**Termination of Employment**

| Reason for Leaving | Quit with Notice | | Quit without Notice | | Laid Off | | Terminated | |
|---|---|---|---|---|---|---|---|---|
| | End of Assignment | | | | | | | |
| Last Day Worked | | | | | Eligible for Re-hire | | Yes ☐ | No ☐ |
| Benefits Given | | | | | | | | |

**COMMENTS:**

Ms. Chloe Baker will be entitled to leave benefits and fringe benefits which include group medical insurance and life insurance, and 403(b) when eligible.

Employee: Chloe Baker [signature] Date: 9/28/18

Executive Approval: [signature] Date: 10/8/18

**HUMAN RESOURCES**

HRB Created: 09/27/2018 HRB Entered: ______________ Payroll Received: ______________

0114



# Lone Star Legal Aid
## TEMPORARY WORKER AGREEMENT
**(Non-Exempt)**

**WORKER'S NAME: BAKER, CHLOE M.**

**Social Security #: 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**

**ASSIGNMENT**

As a Temporary worker with Lone Star Legal Aid you will be asked to perform the following job duties: **Paralegal 2**. Your assignment will be in the following Lone Star Legal Aid Office: **MVU/Houston Branch Office**. This assignment will start on the following date: **October 1, 2018** and end on the following date: **December 31, 2018.** The Project Director and Managing Attorney of the above Lone Star Legal Aid office will assign your work duties. There is no guarantee of a minimum number of work hours or work days during the term of this agreement. This agreement may be cancelled with or without notice -- with or without cause.

**COMPENSATION**

You will be paid pursuant to the LSLA **Paralegal 2** Salary Schedule Step 2 **$31,000.00.** You will be paid semi-monthly (on the 15th and last working day of the month). State and federal taxes will be withheld from your check.

**BENEFITS**

As a Contract employee temporary worker you are not a regular LSLA employee. However under the terms of this agreement, you will be entitled to leave benefits. This includes annual, sick and personal business leave and holiday pay; you will be also entitled to fringe benefits which includes group medical insurance, life insurance, and 403 (b) when eligible.

**POLICIES AND PROCEDURES**

As a temporary worker, you are expected to follow all LSLA policies and procedures. In the course of this assignment you may be working with client related information. Such information must be treated as confidential and may not be used for any purposes outside of LSLA, divulged to others, or used for personal benefit at any time or in any manner.

**ACCEPTANCE OF OFFER**

There is no guarantee for further work after this assignment period ends. This relationship is temporary and voluntary. Either party may terminate the work relationship at any time, with or without notice, with or without cause or reason.

I agree to the above-stated terms and conditions:

[signature] Worker Signature — 10/8/18 Date

**Approval**

[signature] Project Manager or Unit Manager or Supervisor — 10/8/18 Date

[signature] Deputy Director or Designee — 10/8/18 Date

Lone Star Legal Aid, 1415 Fannin Street, Houston, Texas 77002
Offices in Angleton, Beaumont, Belton, Bryan, Galveston, Houston, Longview, Nacogdoches, Paris, Texarkana, Tyler, Waco

# EXHIBIT 7

Final Extension Notice

PAUL E. FURRH, JR.
Attorney at Law
Chief Executive Officer

ERNEST W. BROWN, JR.
Attorney at Law
Deputy Director

Mailing Address:
1415 Fannin Street
Houston, Texas 77002

713-652-0077 Telephone
713-652-2709 Fax
800-733-8394 Toll-free

**Lone Star Legal Aid**
**ADMINISTRATIVE OFFICE**
**Houston, Texas**

December 21, 2018

*Via email*
Ms. Chloe M. Baker

Re: Notice of Extension of your Temporary Worker Agreement and Personnel Action Form

Dear Ms. Baker,

Please be advised that LSLA will extend your Temporary Worker Agreement which ends December 31, 2018 for an additional month until January 30, 2019. To that end, we are enclosing a Temporary Worker Agreement and Personnel Action Form memorializing the 30 day extension.

Please review, sign, and date the attached Temporary Worker Agreement and Personnel Action Form, and return both documents to Pamela Sotoodeh via email psotoodeh@lonestarlegal.org.

I would also appreciate it if you will send all originals to Ms. Sotoodeh at the following address:

Pamela Sotoodeh
Director of Administration
Lone Star Legal Aid
P.O. Box 398
Houston, Texas 77001-0398

Thank you for your cooperation.

Sincerely,

[signature]

ERNEST W. BROWN, JR.
Deputy Director

EWB/JM

RECEIVED
DEC 27 2018
ACCOUNTING DEPT
C.D.C.R

*Serving the East Region of Texas since 1948*
Angleton, Beaumont, Belton, Bryan, Conroe, Galveston, Houston, Longview, Nacogdoches, Paris, Texarkana, Tyler, Waco

# EXHIBIT 8

January 2019 Temporary
Worker Agreement

# LONE STAR LEGAL AID
# PERSONNEL ACTION MEMO

| Date | December 21, 2018 |
|---|---|

| Name: Baker, Chloe | | Title: Paralegal II | | | | | |
|---|---|---|---|---|---|---|---|
| Exempt | Non Exempt X | Office/Unit/Dept. : MVU Houston Branch Office | | | | | |
| Social Security # | 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 | Male | | Female | X | Date of Birth | 6/18/1996 |
| Hire Date | 10/01/2018 | Entry Level Date: | | Re-hire Date: | | | |

**Employment Change : Extension of Temporary Worker Agreement**

| New Hire | | Full Time | X | Part Time | | Contract | X | Grant | | Temporary | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Transfer | | Transfer to: | | | | Contract/Grant Name: | | | | | |
| | | Transfer From: | | | | Beginning Date | 01/01/2019 | | | | |
| Position/Title Change | | | | | | Ending Date | 01/31/2019 | | | | |

**Compensation**

| Annual Salary | $31,000.00 | Hourly Rate: | | Avg. Hrs Work | | 40 | | |
|---|---|---|---|---|---|---|---|---|
| Annual Increment | Old Salary: | New Salary: | | Step | 2 | Retro | Yes | No ☐ |
| Funding Source: New: | | | Effective Date | 01/01/2019 | | | | |
| Funding Source: Change: | | | Effective Date | | | | | |

**Termination of Employment**

| Reason for Leaving | Quit with Notice | | Quit without Notice | | Laid Off | | Terminated | |
|---|---|---|---|---|---|---|---|---|
| | End of Assignment | | | | | | | |
| Last Day Worked | | | | | Eligible for Re-hire | | Yes ☐ | No ☐ |
| Benefits Given | | | | | | | | |

**COMMENTS:**

Ms. Chloe Baker's Temporary Worker Agreement which ends December 31, 2018 is extended for an additional month, terminating on January 31, 2019

Employee: Chloe Marie Baker Date: 12/26/18

Executive Approval: [signature] Date: 1-3-19

**HUMAN RESOURCES**

HRB Created: 12/21/2018 HRB Entered: ______________ Payroll Received: ______________

0114



# Lone Star Legal Aid
## TEMPORARY WORKER AGREEMENT
**(Non-Exempt)**

**WORKER'S NAME:** BAKER, CHLOE M.

**Social Security #:** 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

**ASSIGNMENT**

As a Temporary worker with Lone Star Legal Aid you will be asked to perform the following job duties: **Paralegal 2**. Your assignment will be in the following Lone Star Legal Aid Office: **MVU/Houston Branch Office**. This assignment will start on the following date: **January 1, 2019** and end on the following date: **January 31, 2019.** The Project Director and Managing Attorney of the above Lone Star Legal Aid office will assign your work duties. There is no guarantee of a minimum number of work hours or work days during the term of this agreement. This agreement may be cancelled with or without notice -- with or without cause.

**COMPENSATION**

You will be paid pursuant to the LSLA **Paralegal 2** Salary Schedule Step 2 **$31,000.00.** You will be paid semi-monthly (on the 15th and last working day of the month). State and federal taxes will be withheld from your check.

**BENEFITS**

As a Contract employee temporary worker you are not a regular LSLA employee. However under the terms of this agreement, you will be entitled to leave benefits. This includes annual, sick and personal business leave and holiday pay; you will be also entitled to fringe benefits which includes group medical insurance, life insurance, and 403 (b) when eligible.

**POLICIES AND PROCEDURES**

As a temporary worker, you are expected to follow all LSLA policies and procedures. In the course of this assignment you may be working with client related information. Such information must be treated as confidential and may not be used for any purposes outside of LSLA, divulged to others, or used for personal benefit at any time or in any manner.

**ACCEPTANCE OF OFFER**

There is no guarantee for further work after this assignment period ends. This relationship is temporary and voluntary. Either party may terminate the work relationship at any time, with or without notice, with or without cause or reason.

I agree to the above-stated terms and conditions:

Chloe Marie B[signature]
Worker Signature

12/26/18
Date

**Approval**

[signature]
Project Manager or Unit Manager or Supervisor

1/3/19
Date

[signature]
Deputy Director or Designee

1-3-19
Date

**Lone Star Legal Aid, 1415 Fannin Street, Houston, Texas 77002**
Offices in Angleton, Beaumont, Belton, Bryan, Galveston, Houston, Longview, Nacogdoches, Paris, Texarkana, Tyler, Waco

LON0054

# EXHIBIT 9

Internal Complaint


**Pamela Sotoodeh**

---

**From:** Pamela Sotoodeh
**Sent:** Friday, January 04, 2019 6:27 PM
**To:** Chloe Baker
**Cc:** Ernest Brown; Pamela Sotoodeh
**Subject:** FW: Concerns

Dear Ms. Baker,

Mr. Brown is out of town to attend a conference next week and has asked me to communicate to you that he has received your January 3, 2018 email initially sent to Ms. Lopez, and that is attached below. Mr. Brown is accepting your email as a formal complaint. He has asked me to tell you that he will investigate this serious matter and will touch base with you regarding your concerns, as well as schedule a meeting with you. Since he is out of the office he may not be able to communicate with you until next Friday, January 11, 2019. At that time, he will call you and schedule a meeting.

We appreciate your patience.

Sincerely,

Pamela Sotoodeh
Director of Administration
Lone Star Legal Aid
P.O. Box 398
Houston, Texas 77001-0398
psotoodeh@lonestarlegal.org
(713) 652-0077

---

**From:** Sonia Lopez <SLopez@lonestarlegal.org>
**Date:** January 4, 2019 at 12:06:53 PM CST
**To:** Chloe Baker <CBaker2@lonestarlegal.org>
**Cc:** Ernest Brown <EBrown@lonestarlegal.org>
**Subject: RE: Concerns**

Hi there Chloe,

I received your email and am forwarding it to our Deputy Director, Ernest Brown. You will be contacted soon.

As for your travel reimbursements, I received the revised statements at the end of December after you and Lili went back and forth on them. I still have some questions on the parking, but I will submit them today for processing. Please, however, be aware that you might not receive the entire amount requested because there are no receipts for parking. Our Accounting Department will work out those details with you, and I would rather not delay my approval of your request any longer.

I know you're out for the rest of the day and hope you get to feeling better.

Talk soon.

Sonia

---

**From:** Chloe Baker
**Sent:** Thursday, January 03, 2019 2:51 PM
**To:** Sonia Lopez
**Subject:** Concerns

Hello Sonia,

Before the recent holiday break, we spoke about the malicious acts that have been directed towards me at MVU. We discussed Anna Martinez reporting things in her notes that were not true in regards to me, her conversation with colleagues in the office where she expresses her dislike for me; telling a few lawyers in the office that I, "kiss butt", and lastly we discussed her attempt to get applicants to file complaints on me instead of simply helping them herself.

There have also been multiple incidents where she comes to my desk just to see if I am at work without wanting anything. I am in a corner cubicle and am pretty soft spoken so for the most part you will not see me unless needed, for months while I was at Combined Arms, she harassed me and even filed false reports saying that I had left the office and taken personal time without letting anyone know.

On November 1, 2018 while I was still reporting to Combined Arms, there was someone at the door. Although we usually take turns, Anna Martinez decided to scream my name throughout the office following with door. "Chloe, door. Chloe, door." Nicola Ostlund went to open the door, but since my name had been called I also got up to see what the commotion was about. As I walked up behind the two of them, Anna was telling Nicola to sit down and not open the door because she was going to make me do so instead.

Alas, we are in a New Year with new issues. Today 1/3/19 Courtney Paulding emailed me a note referring to me as, "the help" or something along those lines. This is rather concerning and disturbing due to the negative, racist, notation that is associated with this language. I take immense offense to this and I do not deem it appropriate language for the work place. It is even more so concerning due to the fact that the only African American paralegal in your unit was referred to this by this vulgar phrase by a Caucasian counterpart. I am sure you are aware of this history concerning the troublesome phrase, but if you are not, it was used to refer to indentured slaves. A more modernized version would be some who whom works under you. Courtney Paulding and I carry the same title and I am not her subordinate. Even if the prior statement were true, it is still a **derogatory** phrase that I will not tolerate. This is the same counterpart who called you in November of 2018 to go on a rant slandering me in the middle of the office.

I am not sure what the next steps are in order to formally file a complaint, but I am hoping that we are already going in the right direction.

On an unrelated note, currently I am owed 3 months or reimbursement. I made a trip to Jefferson last Thursday 12/27/18 and they have no paperwork on file on my behalf although I've turned it in months ago. Cristina De Los Reyes sent you an email on my behalf. Currently my bank account is -$493.00 not including any fees accrued due to the shortages of my travel reimbursements.

Please let me know when you have read this email.

Chloe Baker

# EXHIBIT 10

Paulding ‘Helper’ Note

**From:** Courtney Paulding
**To:** Mariah Nolan; Chloe Baker
**Subject:** RE: Came by office.......{Sanders, Bruce [Intake Matter]}Sanders, Bruce - [Intake Note]{Matter No.[1811-034365-MVU]}
**Date:** Thursday, January 3, 2019 12:04:26 PM

It was mean – I quoted the statement so that it would show his disposition – I am happy to eliminate it if you want. I try to capture the converstations as the applicant/client communicates.

---

**From:** Mariah Nolan
**Sent:** Thursday, January 3, 2019 11:57 AM
**To:** Courtney Paulding; Chloe Baker
**Subject:** RE: Came by office.......{Sanders, Bruce [Intake Matter]}Sanders, Bruce - [Intake Note]{Matter No.[1811-034365-MVU]}

The attorney and her helper is a rather mean choice of words and I don't think that should be part of any applicants' notes.

---

**From:** Courtney Paulding
**Sent:** Thursday, January 03, 2019 10:23 AM
**To:** Chloe Baker; Mariah Nolan
**Subject:** Came by office.......{Sanders, Bruce [Intake Matter]}Sanders, Bruce - [Intake Note]{Matter No.[1811-034365-MVU]}

Most recent notes.........

12/27/2018 02:01 PM (CBAKER2) A came into the VA to bring in more denial letters. A was denied three more times and would like to know what his next steps are. I gave him referral to combined arms as an attempt to search for better avenues. However, A is adament about getting his phone through assurance and would like to get a reportive investigator on the case. I informed A that he if more than welcome to do so, but we do not do things of that caliber.

12/28/2018 08:33 AM (CPORTER2)C came to the office yesterday. I answered the door said he was looking for someone to help him with his cell phone. Couldn't really understand what he was saying. Seem very all over the place. He said that he was told from people at VA to come here. I called MN and CB they said they recommended that he came to combined arms and see if they can assist him with getting cell phone. I walked him down to combined arms, but they were closed until after the new year. He discussed that he was receiving letters rejecting from gettin a cell phone and he wanted a lawyer to sue the company even if he is able to get a cell phone for a different company. He said he would come back to combined arms after the holiday.

01/03/2019 10:09 AM (CPAULDIN) C came by office this morning. Stated that he needed a lawyer to sue the Texas Commissions (something or other) and Assurant Wireless because Assurant has repeatedly denied him a cell phone. Ranted about his individual rights being violated because he is being denied a phone. I informed him that having a phone was not a "right" per se, but acknowlegded that it was an inconvenience. He further demanded that we sue the cell phone company because of the multiple denials. I told him that since this is not an indivdual rights issue, that we do not engage in civil suit, fee-generating litigation. Though, we certainly do assist our clients in other matters, such as individual rights, family law issues, etc....

I asked him if he had the most recent denial letter with him and he said "no". I told him if he had the document, then perhaps we could examine it closely for the speicificity that he is searching for regarding the denial.

Next, I asked him if he was able, through CB2's assistance, to talk to a supervisor at Assurant and he stated that phone calls were made but no progress (in his favor) was rendered. He is demanding to know why is documentation is insufficient. C stated that he went to Combind Arms and no one was able to assist him. C stated that he was going to back to the VA to talk to "that attorney and her helper". I told him that I would let CB/MN know that he may drop-in and that he must bring he most recent denial letter with him.

# EXHIBIT 11

Martinez ‘Young Black Girl’ Note

**Chloe Baker**

**From:** Chloe Baker
**Sent:** Friday, January 04, 2019 10:09 AM
**To:** Sonia Lopez
**Cc:** Anna Martinez; Mariah Nolan
**Subject:** {Garza, Joel M [Intake Matter]}Garza, Joel M - [Intake Note]{Matter No.[1901-000217-MVU]}
**PM Message ID:** 8160292

1/3/2019 4:21:30 PM by AMARTINEZ for Garza, Joel M PC: 01 LawType: Bankruptcy/ Debtor Relief HH: 1

A is seeking assistanct with bankruptcy. A called to say that he had filled out an application at debakey and wondered where it was in the process of being accepted. Let A know that I could not find an application, A had called previously and I had asked CB if she had the application and if so could she please enter it in the system, CB said she would call him. Yesterday when A called he said it had been a month and he was getting upset. Asked NJO to assist, NO asked client his full name and ss# to see if maybe it was entered wrong. No such application existed, A was on speaker phone and began to get very irrate. NO said that she was sorry but there was nothing in the system and we could do the application, NO asked how he did the application the first time if it was done through the computer, he said he filled out the application on paper with" a young black girl at the VA hospital" in the Pension/compensation department on 4th floor. NO apologized again and asked if he would like to do the application. To this A started being very rude saying that he was going to the VA hospital and filing a complaint with HR regarding these staff and how they did not do their job and he had waited a month for nothing. NO asked about the issue he was having and who the AP was, A wanted a bankruptcy said he had about $20,000 in debt secured and unsecured. NO asked if he knew much about bankruptcy he said yes and that he wanted a chapter 13, NO said that she could do the application but he would need to fill out the paperwork questionnaire so we could do the means test and figure out if he would qualify for bankruptcy since A seemed to think it was automatic that we simply do these cases. A said he knew he qualified for bankruptcy he had done that, NO asked if he had taken a pre bankruptcy course, that the court requires that also. He said he had the certificate of counseling already it was our fault that nothing was being done and he was filing his complaint with VA. NO explained that he could do that but that legal aid was not affliated with the VA hospital that they merely gave us space via an office. That if A did the application it would be entered in the notes that he was very disatisifed and that he could then file a complaint through the directing attorney who was over the staff members. A began to get more rude then saying there would be no office given to LSLA once he was done filing his complaint at the VA HR. Again NO said that the application could be done now if he wished to try and get assistance and he wanted to complain that she was just letting him know the correct channels. He then started yelling he had enough and that he would do the application and she should just get on with it, his tone of voice was very nasty and NO said that there would be some questions he would need to answer on the the aplication to which A declared "Just get on with it then I have told you that". NO handed phone back to me to do the application but A had hung up. Called A back to do the application he did not answer, left a vm to call us back. He then called back and information was entered into PM.

01/04/2019 09:30 AM (SLOPEZ) - matter reviewed. WF-AM schedule intake w AMoore

01/04/2019 10:05 AM (CBAKER2) I have a preliminary application for this applicant. I attempted to call to complete application to no avail, I have only spoken with this client on one occassion which he had already been instructed to file a complaint on me by my collegauges. On the day in question, I had already went home for the day and the office had been closed for the following holiday. However, after hearing how upset he had been I took personal time to reach out to client where he had already been provoked to, "take pictures of my door," and "file a complaint on the company" instead of simply helping the applicant over the phone since this location had already been closed. Email SLopez about concerning language in notes being offensive .

This is not the first time my race and age has been brought into the notes. I take extreme offense to it and I do not see what this adds to the notes nor how this language is a good representation of Lone Star Legal Aid.

Sonia, please let me know when you have read this email. Thank you.

1/4/2019

DEPOSITION
EXHIBIT
11
Baker
PENGAD 800-631-6989

# EXHIBIT 12

Dannheim 'Girl' Note

Practice Manager Desktop - Citrix online plug-in

Matters Entities Documents Timeslips Notes Groupware Workflow New Filter Query Refresh Printer Desktop Exit

Note | Relate to Matters | Relate to Entities | Related Annotations | Relate to Issues

Description: Williams, Marcellus L - (Intake Note)

Type: INTAKE — Intake

Author: BDANNHEIM — Dannheim, Betty

Flag note as: Locked / Private

Arial 12

**10/11/2018 3:11:01 PM by BDANNHEIM for Williams, Marcellus L** Seen at MacGregor Park outreach 10/5/18 **INCOMPLETE APPLICATION**
Unsure what the A's issues are Consumer and Miscellaneous were both checked on prelim application; called A and L/M for him and he has not called me back today, prep'd 10 day letter, scanned & dropped prelim app in PM, WF to BD to f/u on 10 day letter

**10/15/2018 1:15:28 PM (BDANNHEI)** rec'd message from A, called him back and L/M

**10/15/2018 4:16:59 PM (BDANNHEI)** finished with application.
A is trying to collect a debt from brother for a computer that he bought and financed for him through Barclays Bank in Delaware for $3600.00 with the stipulation that he would pay him back and also give him his old computer. In 2017 A went to Vantage Acceptance, a debt negotiator, and got this reduced to $950.00 A's brother Tyrone has not paid anything on this and told him he isn't going to pay nor is he going to give him the computer. No written agreement, this was a handshake deal with his brother. A said he was told by a girl at the outreach that we would do an inability to pay for him since that was all he wanted. not really sure but will get with CB2 tomorrow. Gave A fax# to send vet doc.

**10/16/2018 08:21 AM (CBAKER2)** Received VA letter via vet help box. Spoke with BD about previous note. Since there were 3 women at the outreach, not sure who could've told him this legal information. Doubt A was told by me that I would do something for him legally considering we can't do as little as give advice without completed eligibility information. Upload to PM, update matter aux tab

DEPOSITION EXHIBIT 7 Baker

PENGAD 800-631-6989

# EXHIBIT 13

Investigation Notice



**PAUL E. FURRH, JR.**
Attorney at Law
Chief Executive Officer

**ERNEST W. BROWN, JR.**
Attorney at Law
Deputy Director

Mailing Address:
1415 Fannin Street
Houston, Texas 77002

713-652-0077 Telephone
713-652-2709 Fax
800-733-8394 Toll-free

**Lone Star Legal Aid**
**ADMINISTRATIVE OFFICE**
**Houston, Texas**

January 31, 2019

**MEMO TO FILE**

To: Chloe Baker
From: Ernest W. Brown, Jr.
Deputy Director/Lone Star Legal Aid

Re: Response to January 3, 2019 formal complaint

I have concluded my internal investigation of the concerns raised in your January 03, 2019 formal complaint.

I have interviewed interested parties and reviewed the relevant notes in Practice Manager. Although the notes entered by LSLA staff in the case management system could be interpreted as inappropriate, the drafter was following our training pertaining to accurately memorializing statements made by the applicant. We do not condone the language reflected in the notes in question. The notes are, however, an accurate reflection of statements made by the applicant and transferred into his file.

In addition, your complaints pertaining to interoffice personality dynamics have been addressed with the relevant parties.

It is my conclusion that the claims you allege in your formal complaint do not rise to the level of harassment and/or racial discrimination.

*Serving the East Region of Texas since 1948*
Angleton, Beaumont, Belton, Bryan, Conroe, Galveston, Houston, Longview, Nacogdoches, Paris, Texarkana, Tyler, Waco

LSC TEXAS ACCESS to JUSTICE FOUNDATION

EQUAL JUSTICE WORKS

LON0040

# EXHIBIT 14

Doctor's Note



DEPARTMENT OF VETERANS AFFAIRS
Medical Center
2002 Holcombe Boulevard
Houston TX 77030

In Reply Refer To: 580/111/PC

# Certificate of Visit

~~Mr~~/Ms/~~Mrs.~~ Chloe Marie Baker was seen in the Prime Care Clinic at the VA Medical Center on Jan 22nd 2019 Thursday (day), 01 / 22 / 2019 (date).

~~He~~/she will be unable to perform their regular work until Feb / 1st / 2019

Restrictions are (if applicable) ____________________________.

[signature]
Signature and Title

1/24 2019
Date

DEPOSITION EXHIBIT 3 Baker
PENGAD 800-631-6989

# EXHIBIT 15

## FMLA Paperwork Request

**Pamela Sotoodeh**

| | |
|---|---|
| **From:** | Pamela Sotoodeh |
| **Sent:** | Friday, January 25, 2019 3:56 PM |
| **To:** | Chloe Baker (chloembaker2014@gmail.com) |
| **Cc:** | Ernest Brown; Sonia Lopez; Pamela Sotoodeh |
| **Subject:** | FW: FML Paperwork |

Also, when you receive the paperwork you will notice that your twelve weeks began January 22, 2019, assuming you have been out on sick leave since that date. If my information is inaccurate, please let me know immediately.

Thank you.

Pamela Sotoodeh
Director of Administration

---

**From:** Pamela Sotoodeh
**Sent:** Friday, January 25, 2019 3:49 PM
**To:** Chloe Baker
**Cc:** Ernest Brown; Sonia Lopez; Pamela Sotoodeh
**Subject:** RE: FML Paperwork

Thank you for your email. I am sending you FMLA paperwork today through first class mail. Please have your physician complete the Health Certification form, along with the request for FMLA leave and return as soon as possible. Please return to me at Lone Star Legal Aid, P.O. Box 398, Houston, Texas 77001-0398. I have also included a Short term disability claim form if it becomes necessary to file.

Pamela Sotoodeh
Director of Administration
Lone Star Legal Aid
P.O. Box 398
Houston, Texas 77001-0398
psotoodeh@lonestarlegal.org
(713) 652-0077

**From:** Chloe Baker [mailto:chloembaker2014@gmail.com]
**Sent:** Friday, January 25, 2019 9:16 AM
**To:** Pamela Sotoodeh; Sonia Lopez
**Subject:** FML Paperwork

Hello,
My psychiatrist would like for me to spend a few days at home. I asked Sonia for paperwork that needed to be signed and was told that I should've received it from my Dr. After returning to her office, she informed me that I needed to contact HR to retrieve FML Paperwork. My next appointment is today around 1.

Please send over any necessary paperwork so that I can have it filled out by my psychiatrist. Thank you.

**Chloe Baker, U.S. Air Force**
Email: Chloembaker2014@gmail.com
Phone: 713-775-3077

# EXHIBIT 16

Termination Notice

**PAUL E. FURRH, JR.**
Attorney at Law
Chief Executive Officer

**ERNEST W. BROWN, JR.**
Attorney at Law
Deputy Director

**Lone Star Legal Aid**
**ADMINISTRATIVE OFFICE**
**Houston, Texas**

Mailing Address:
1415 Fannin Street
Houston, Texas 77002

713-652-0077 Telephone
713-652-2709 Fax
800-733-8394 Toll-free

January 31, 2019

*Via email*
Ms. Chloe Baker

Re: Notice of non-renewal of Temporary Worker Agreement

Dear Ms. Baker:

Please be advised that your Temporary Worker Agreement terminates today, January 31, 2019.

Lone Star appreciates the commitment and hard work you have given to our firm and the people we help. We wish you the best of luck and success.

Sincerely,

ERNEST W. BROWN, JR.
Deputy Director

EWB/ps

*Serving the East Region of Texas since 1948*
Angleton, Beaumont, Belton, Bryan, Conroe, Galveston, Houston, Longview, Nacogdoches, Paris, Texarkana, Tyler, Waco

LSC TEXAS ACCESS to JUSTICE FOUNDATION

United
Way

EQUAL JUSTICE WORKS

LON0041

# EXHIBIT 17

## 460-2019-02226 EEOC Inquiry

BEST AVAILABLE COPY

# EEOC (INQUIRY) NUMBER: 460-2019-02226

## Inquiry Information

### REASON(S) FOR CLAIM

**Date of Incident (Approximate):** 01/31/2019

**Reason for Complaint:** Race, National origin and/or ethnicity, Color, Retaliation - I filed a charge of job discrimination about any of the above

**Pay Disparity:**

**Location of Incident:** Texas

**Submission (initial inquiry) Date:** 02/21/2019

**Claim previously filed as charge with EEOC?** No

**Approximate Date of Filing:** N/A

**Charge Number:** N/A

**Claim previously filed as complaint with another Agency?** No

**Agency Name:** N/A

**Approximate Date of Filing:** N/A

**Nature of Complaint:** N/A

### INQUIRY OFFICE

**Receiving:** Houston District Office

**Accountable:** Houston District Office

### APPOINTMENT

**Appointment Date and time:**

**Interview Type:**

### APPROXIMATE DEADLINE FOR FILING A CHARGE: 11/26/2019

### POTENTIAL CHARGING PARTY

**First Name, Middle Initial:** Chloe

**Last Name:** Baker

**Street or Mailing Address:** 6935 Hockley Garden

**Address Line 2:**

**City, State, Zip:** HOUSTON, TX, 77049

**Country:** UNITED STATES OF AMERICA

**Year of Birth:**

**Email Address:** (b) (6), (b) (7)(C)

**Home Phone Number:**

**Cell Phone Number:** (b) (6), (b) (7)(C)

FOIA permits the agency to withhold information where disclosure of such information could result in an unwarranted invasion of personal privacy. 2 lines Redacted.

## RESPONDENT/Employer

**Organization Name:** LONE STAR LEGAL AID

**Type of Employer:** Business or non-profit organization that I applied to, work for, or worked for

**Number of Employees:** 20 or more employees

**Street or Mailing Address:** 500 Jefferson

**Address Line 2:**

**City, State, Zip Code:** HOUSTON,TX, 77002

**County:** Harris

**Phone Number:**

## RESPONDENT CONTACT

**First and Last Name:** Pamela Sotoodeh

**Email Address:**

**Phone Number:**

**Title:** Human Resources Director or Owner

## LOCATION OF POTENTIAL CHARGING PARTY'S EMPLOYMENT

**Street or Mailing Address:** 2929 McKinney

**Address Line 2:**

**City, State, Zip Code:** HOUSTON, TX, 77003

**County:**

## POTENTIAL CHARGING PARTY'S DEMOGRAPHICS

**Gender:** F

**Disabled:** I do not have a disability

**Are you Hispanic or Latino?** not hispanic or latino

**Ethnicity:** American Indian or Alaskan Native, Black or African American,

**National Origin:** American(U.S.)

## Adverse Action(s)

I filed a complaint because of co worker harassing me in the workplace and making it a hostile environment 12/27/18 I am of African/Native American decent and have been referred to as "girl" 10/15/18 "the black girl"1/3/19 "helper"1/19/19 in notes and emails.

On 01/22/19 I was assigned 40 new tasks that would normally belong to the co worker that I had filed a complaint on. . I was sent home for 8 days of sick leaveI had 10 days of sick leave still able to use, but I still have not been paid. 1/31/19 the findings of HR about my compliant (which was dated incorrectly) was sent to me saying the notes about me were appropriate and apart of the company's training. Within 10 minutes of that email, I was sent my termination papers.

# Supplemental Information

**What Reason(s) were you given for the action taken against you?**

N/A

**Was anyone in a similar situation treated the same, better, or worse than you?**

N/A

**Please provide name(s) and email and/or phone number of anyone who will support your claim, and briefly describe the information this person will provide.**

N/A

**Please tell us any other information about your experience?**

N/A

# EXHIBIT 18

## 460-2019-02226 Activity Log

## ACTIVITY LOG

### 460-2019-02226N

| Date | User | Event |
|---|---|---|
| 09/23/20 14:44 | IMS | Charging Party accessed closed charge. |
| 08/28/20 09:10 | IMS | Charging Party accessed closed charge. |
| 08/27/20 11:33 | IMS | Charging Party accessed closed charge. |
| 08/27/20 11:33 | ONLINEINQ | Charging Party accessed closed charge. |
| 08/27/20 11:12 | Public Portal | Charging Party accessed closed charge. |
| 08/27/20 11:12 | ONLINEINQ | Charging Party accessed closed charge. |
| 05/05/20 16:02 | (b) (6), (b) (7)(C) | Charging Party accessed closed charge. |
| 05/05/20 16:02 | Public Portal | Charging Party accessed closed charge. |
| 03/19/19 15:02 | IMS | Scheduled Appointment has been cancelled. |
| 02/21/19 01:58 | (b) (6), (b) (7)(C) | Appointment Scheduled at 05-02-2019 15:00 US/Central by (b) (6), (b) (7)(C) Baker, Chloe |
| 02/21/19 01:57 | | Online inquiry submitted for Houston District Office |

FOIA permits the agency to withhold information where disclosure of such information could result in an unwarranted invasion of personal privacy. 6 lines Redacted.

# EXHIBIT 19

## 460-2019-02226 Detail

# Confidential - For Official Use Only

Any reports or printouts of data identifying particular charges, individuals, or respondents must be kept confidential in accordance with the Privacy Act, 5 U.S.C. § 552a, Title VII, 42 U.S.C. §§ 2000e-5(b), -8(e), and the ADA, 42 U.S.C. § 12117(a). Information in the report may not be disclosed outside the agency without prior authorization. Unauthorized use of disclosure is subject to penalty of law. Under Title VII and the ADA, it is a criminal offense for any EEOC employee to make public in any manner whatever any Title VII or ADA charge information prior to litigation. The statute provides for a fine of up to $1,000 or imprisonment of up to one year.

Information in this report may be provided to another government agency, including a state or local fair employment practices agency, as appropriate or necessary to carry out the EEOC's functions. 29 C.F.R. § 1601.22. Any further distribution of this data report, within EEOC or to another government agency, must include this confidentiality statement. Printouts containing confidential charge data must be shredded when they are discarded.

These confidentiality requirements do not apply to aggregate statistical data provided in a form that does not reveal the identity of charging parties, respondents, or persons supplying information to EEOC. 29 C.F.R. § 1601.22. These confidentiality requirements also do not apply to disclosure to a party in litigation when the information is involved in the litigation.

**CHARGE #** 460-2019-02226N **FORMALIZED OFFICE** **STAFF** S_IMS Service
**LEAD CHARGE #** **ACCOUNTABILE OFFICE** 460 **UNIT** 1
**FEPA #**

**DATE INITIAL INQUIRY** 02/21/2019
**DATE FIRST OFFICE**
**DATE DISTRICT**
**THIS OFFICE DATE**

**CHARGING PARTY INFORMATION**

Baker, Chloe
6935 Hockley Garden

HOUSTON TX 77049 **Country** USA

**Home**
**Work**
**Cell** (b) (6), (b) (7)(C)

**Race**
Black or African American

**Sex** F **Date of Birth** **Nat Origin**

**Email Address** (b) (6), (b) (7)(C)

FOIA permits the agency to withhold information where disclosure of such information could result in an unwarranted invasion of personal privacy. 2 lines Redacted.

**CHARGING PARTY CONTACT**

**RESPONDENT INFORMATION**

LONE STAR LEGAL AID
500 Jefferson

HOUSTON TX 77002 **Country** USA

**Phone** **FAX**
**R Type** E **SMSA** 3360

**Size**
**EEO1 HDQ** **EEO1 Unit**
**NAICS Code**
**Email Address**

**RESPONDENT CONTACT**

**PROCESSING INFORMATION**

**Communication Method** B **Source of Complaint** **Processing Type** O **Processing Category**
**Subpoena** **Suspense** **Transfer From:** **Deferral Office**
**Staff** **Staff Assigned Date** **Staff Function/Unit**
**Last Action** 01/05/2022 O1 FOIA Requested Office: 460 F/U: Del: A
**Final Closure Action** 03/19/2019 1 XA Inquiry Closed Office: 460 F/U: I1

**ALLEGATIONS**

**BENEFITS**

**ACTION HISTORY**

| Date | Seq | Code | Description | Attributes | Office | F/U | Del |
|---|---|---|---|---|---|---|---|
| 03/19/2019 | 1 | XA | Inquiry Closed | 1:E | 460 | I1 | |
| | | | Allegations made by PCP were inveisitgated by Respondent. (b) (5) | | | | |
| 01/05/2022 | | O1 | FOIA Requested | 1:460-2022-003370 | 460 | | |

**IMS NOTES**

**Note Date** 03/19/2019 **Subject** (b) (5) **Created By** Gardner, Jr, Vernon M
**Note** (b) (5)

**Note Date** 09/01/2020 **Subject** CP contact **Created By** Crosbie, Jeremy
**Note** (b) (5)

The redacted portions of the document consist of evidence, legal theories and selective facts whose release would reveal the investigator's pre-decisional thoughts and analysis regarding the charge. 18 lines Redacted.

# EXHIBIT 20

EEOC Letter



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Houston District Office**

Mickey Leland Building
1919 Smith Street, 7th Floor
Houston, TX 77002
Houston Direct Dial: (713) 651-4900
TTY (713) 651-4901
FAX (713) 651-4902
Website: www.eeoc.gov

September 23, 2020

Dear Ms. Chloe Baker:

This is in response to your email dated September 11, 2020, concerning a portal inquiry that you submitted to the U.S. Equal Employment Opportunity Commission (EEOC) on February 21, 2019, involving Lone Star Legal Aid, inquiry #460-2019-02226.

A review of the investigative file reveals that you were interviewed by Investigator Vernon Gardner on March 13, 2019. Mr. Gardner's notes indicate that you were advised of your right to file a charge of discrimination against Lone Star Aid; however, you chose not to file a charge at that time. Since more than 300 days have elapsed since your date of harm, January 31, 2019, your allegations of discrimination are now considered time-barred.

While we understand that you fimly dispute Mr. Gardner's version of what was discussed during your interview on March 13, 2019, we must make a decison based on the information and facts provided by Mr. Gardner in the investigative file.

Based on the discussion above, no further action will be taken regarding this inquiry.

Sincerely,

Gabriel Cervantes

Gabriel Cervantes
Intake Supervisor

# EXHIBIT 21

## 460-2020-03799 EEOC Inquiry

# EEOC (INQUIRY) NUMBER: 460-2020-03799

## Inquiry Information

### REASON(S) FOR CLAIM

**Date of Incident (Approximate):** 01/15/2020

**Reason for Complaint:** Race, National origin and/or ethnicity, Color, Disability, Retaliation - I complained to my employer about job discrimination

**Pay Disparity:**

**Location of Incident:** Texas

**Submission (initial inquiry) Date:** 05/05/2020

**Claim previously filed as charge with EEOC?** No

**Approximate Date of Filing:** N/A

**Charge Number:** N/A

**Claim previously filed as complaint with another Agency?** No

**Agency Name:** N/A

**Approximate Date of Filing:** N/A

**Nature of Complaint:** N/A

### INQUIRY OFFICE

**Receiving:** Houston District Office

**Accountable:** Houston District Office

### APPOINTMENT

**Appointment Date and time:** 05/07/2020 01:00 PM US/Central

**Interview Type:** Phone

### APPROXIMATE DEADLINE FOR FILING A CHARGE:  11/09/2020

### POTENTIAL CHARGING PARTY

**First Name, Middle Initial:** Chloe, M

**Last Name:** Baker

**Street or Mailing Address:** (b) (6)

Release of this information could be expected to invade the individual's personal intake privacy.

**Address Line 2:**

**City, State, Zip:** (b) (6)

**Country:** UNITED STATES OF AMERICA

Release of this information could be expected to invade the individual's personal intake privacy.

**Year of Birth:** (b) (6)

**Email Address:** (b) (6)

**Home Phone Number:** (b) (6)

**Cell Phone Number:** (b) (6)

## RESPONDENT/Employer

**Organization Name:** LONE STAR LEGAL AID

**Type of Employer:** Business or non-profit organization that I applied to, work for, or worked for

**Number of Employees:** 20 or more employees

**Street or Mailing Address:** 2929 McKinney St

**Address Line 2:**

**City, State, Zip Code:** HOUSTON,TX, 77003

**County:** Harris

**Phone Number:** (713) 652-0077

## RESPONDENT CONTACT

**First and Last Name:** Pamela Sotoodeh

**Email Address:**

**Phone Number:**

**Title:** Human Resources Director or Owner

## LOCATION OF POTENTIAL CHARGING PARTY'S EMPLOYMENT

**Street or Mailing Address:**

**Address Line 2:**

**City, State, Zip Code:**

**County:**

## POTENTIAL CHARGING PARTY'S DEMOGRAPHICS

The withheld portion of this document consists of attorney-client communications whose release would reveal the nature, direction and scope of the review.

**Gender:**  F

**Disabled:**  I have a disability

**Are you Hispanic or Latino?**  not hispanic or latino

**Ethnicity:**  American Indian or Alaskan Native, Black or African American,

**National Origin:**  American(U.S.)

**Adverse Action(s)**



## Supplemental Information

**What Reason(s) were you given for the action taken against you?**

N/A

**Was anyone in a similar situation treated the same, better, or worse than you?**

N/A

**Please provide name(s) and email and/or phone number of anyone who will support your claim, and briefly describe the information this person will provide.**

N/A

**Please tell us any other information about your experience?**

N/A

# EXHIBIT 22

460-2020-03799 EEOC Charge

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: Agency(ies) Charge No(s):

[ ] FEPA

[X] EEOC 460-2020-03799

Texas Workforce Commission Civil Rights Division and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Chloe M. Baker | (713) 775-3077 | 1996 |

Street Address / City, State and ZIP Code

6935 Hockley Garden, Houston, TX 77049

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| LONE STAR LEGAL AID | 101 - 200 | (713) 652-0077 |

Street Address / City, State and ZIP Code

2929 McKinney St, Houston, TX 77003

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address / City, State and ZIP Code

DISCRIMINATION BASED ON (*Check appropriate box(es).*)

[X] RACE [ ] COLOR [ ] SEX [ ] RELIGION [ ] NATIONAL ORIGIN

[X] RETALIATION [ ] AGE [X] DISABILITY [ ] GENETIC INFORMATION

[ ] OTHER (*Specify*)

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 01-31-2019 Latest: 01-31-2020

[ ] CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

On January 31, 2019, I was discharged from the position of Managing Paralegal by the above-named company. I had been employed with the company since April 2, 2018. During my employment, I was subjected to harassment by co-workers, Ana Martinez, (Hispanic) Intake Specialist, and Courtney Paulding, (White), Paralegal. Both employees were referring to me via email communication as "the Black girl" or "The Help".

I reported the harassment and provided the evidence to Ernest Brown, (Black) Deputy Director, but nothing was done. Because of the hostile work environment, my physician placed me on medical leave due to my disability. However, during my medical leave, my contract was terminated, and no reasons were given.

Most recently, on January 15, 2020, I had a meeting with Courtney Porter, Attorney regarding a patient. Upon arrival at the office, Ana Martinez refused to give me an intake application and followed

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

I declare under penalty of perjury that the above is true and correct.

x 5/20/2020 x [signature]

*Date* *Charging Party Signature*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*)

BEST AVAILABLE COPY

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | [ ] FEPA | |
| | [X] EEOC | 460-2020-03799 |

**Texas Workforce Commission Civil Rights Division** and EEOC

*State or local Agency, if any*

**me down the hallway saying I was not allowed to be there. I felt threatened and decided to leave the office.**

**I believe that I have been harassed, retaliated and discriminated against because of my race, (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended and my disability, in violation of the Americans with Disabilities Act, Amendment Act (ADAAA).**

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct.<br>x 5/20/2020 x [signature]<br>*Date* *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

# EXHIBIT 23

460-2020-03799 EEOC Notice of Dismissal

EEOC Form 161 (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: **Chloe M. Baker**
**6935 Hockley Garden**
**Houston, TX 77049**

From: **Houston District Office**
**Mickey Leland Building**
**1919 Smith Street, 7th Floor**
**Houston, TX 77002**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **460-2020-03799** | **Jesus M. Santiago, Investigator** | **(346) 327-7709** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☒ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Roy Wilkerson for

**Rayford O. Irvin,**
**District Director**

8-19-20
*(Date Mailed)*

Enclosures(s)

cc: **Pamela Sotoodeh**
**Director of Administration**
**LONE STAR LEGAL AID**
**2929 McKinney St**
**Houston, TX 77003**

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

### PRIVATE SUIT RIGHTS -- Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

### ATTORNEY REPRESENTATION -- Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

Enclosures(s)

cc:

LON0306

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

***Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*** For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# EXHIBIT 24

## 460-2020-03799 Activity Log

## ACTIVITY LOG

### 460-2020-03799C

| Date | User | Event |
|---|---|---|
| 04/21/21 13:07 | IMS | Charging Party accessed closed charge. |
| 03/24/21 19:26 | Stewart, Yvette | Document Download : Closure Notice/NRTS (2020-08-19 161 C. Baker -signed.pdf) |
| 03/24/21 19:26 | Stewart, Yvette | Document Download : Closure Notice/NRTS (2020-08-19 161 C. Baker -signed.pdf) |
| 08/28/20 09:36 | Cervantes, Gabriel | Document Download : Closure Notice/NRTS (2020-08-19 161 C. Baker -signed.pdf) |
| 08/28/20 09:33 | Cervantes, Gabriel | Document Download : Recommendation for Dismissal (Form 291) (Form 291. Baker.pdf) |
| 08/28/20 09:30 | Cervantes, Gabriel | Document Download : Charge of Discrimination (Form 5, Baker, Chloe M..doc.pdf) |
| 08/27/20 11:06 | Santiago, Jesus | Document Download : Recommendation for Dismissal (Form 291) (Form 291. Baker.pdf) |
| 08/26/20 12:55 | Santiago, Jesus | Uploaded Closure Notice/NRTS (2020-08-19 161 C. Baker -signed.pdf) |
| 06/08/20 24:47 | chloembaker2014@gmai CP | Charging party - chloembaker2014@gmail.com successfully logged into Public Portal |
| 06/05/20 17:31 | Villanueva, Thelma | Uploaded Charge Transmittal (Form 212-A) (Charge Transmittal (Form 212-A)) |
| 06/05/20 17:31 | Villanueva, Thelma | Deferral Office Intent: Defer Investigation ,set By Villanueva, Thelma C |
| 05/20/20 17:35 | Santiago, Jesus | Uploaded Recommendation for Dismissal (Form 291) (Form 291. Baker.pdf) |
| 05/20/20 17:34 | | Email bounced sending to pSotoodeh@longstarlegal.org; Email bounced sending to pSotoodeh@longstarlegal.org; Original Subject:Notice of Charge of Discrimination; Returned Subject:Undelivered Mail Returned to Sender |
| 05/20/20 17:34 | Santiago, Jesus | Emailed Notice of Charge to pSotoodeh@longstarlegal.org |
| 05/20/20 17:34 | Santiago, Jesus | Uploaded Notice of Charge (Notice of Charge) |
| 05/20/20 17:34 | Santiago, Jesus | Created Notice of Charge |
| 05/20/20 17:34 | Santiago, Jesus | Assessment approved by Jesus M Santiago. |
| 05/20/20 17:33 | Santiago, Jesus | Assigned Jesus M Santiago for approval. |
| 05/20/20 17:33 | Santiago, Jesus | (b) (5) |
| 05/20/20 17:33 | Santiago, Jesus | Other:CP was not an employee at the time of new incident identified as relevant. |
| 05/20/20 17:33 | Santiago, Jesus | Charge was not filed in time identified as relevant. |
| 05/20/20 17:33 | Santiago, Jesus | Charge assessed as (b) (5) |
| 05/20/20 17:33 | Santiago, Jesus | Charge raises no Topic at this time. |
| 05/20/20 17:33 | Santiago, Jesus | Charge raises no DCP priority at this time. |
| 05/20/20 17:33 | Santiago, Jesus | Charge raises no SEP priority at this time. |
| 05/20/20 16:56 | Santiago, Jesus | Uploaded Charge of Discrimination (Form 5, Baker, Chloe M..doc.pdf) |
| 05/13/20 16:38 | Santiago, Jesus | Uploaded Correspondence To/From Charging Party (Form 5, sent via email, pending signature) |
| 05/13/20 13:00 | Santiago, Jesus | Receiving Office Intent selected: Investigate Charge, Deferral office: Texas Workforce Commission Civil Rights Division |
| 05/06/20 10:27 | Cervantes, Gabriel | Inquiry assigned to JesusMSantiago (71159) By Gabriel Cervantes (5891) |
| 05/06/20 24:18 | Public Portal | A 1-day reminder notice is emailed to the PCP.. |
| 05/05/20 16:13 | rafael.rivera@eeoc.gov | Appointment Scheduled at 05-07-2020 13:00 US/Central by (rafael.rivera@eeoc.gov) Rivera, Rafael. |
| 05/05/20 16:08 | chloembaker2014@gmai CP | Online inquiry submitted for Houston District Office |

**This information represents the investigator's pre-decisional thoughts and analysis regarding the processing of the charge.**

# EXHIBIT 25

VA Medical Center Problem List



# *VA Problem List*

| | |
|---|---|
| **Source:** | VA |
| **Last Updated:** | 21 Apr 2021 @ 1038 |
| **Sorted By:** | Date/Time Entered (Descending) then alphabetically by Problem |

Your VA Problem List contains active health problems your VA providers are helping you to manage. This information is available thirty-six (36) hours after it has been entered. It may not contain active problems managed by non-VA health care providers. If you have any questions about your information, visit the FAQs or contact your VA health care team.

| | | |
|---|---|---|
| **Problem:** | Unemployed (SCT 73438004) | **Date/Time Entered: 30 May 2019 @ 1200** |
| **Provider:** | REED,JOSEPH E III | |
| **Location:** | HOUSTON TX VAMC | |
| **Status:** | ACTIVE | |
| **Comments:** | -- | |

| | | |
|---|---|---|
| **Problem:** | Posttraumatic stress disorder (SCT 47505003) | **Date/Time Entered: 22 May 2019 @ 1200** |
| **Provider:** | NAIR,PARVATHY | |
| **Location:** | HOUSTON TX VAMC | |
| **Status:** | ACTIVE | |
| **Comments:** | -- | |

| | | |
|---|---|---|
| **Problem:** | Depression (SCT 35489007) | **Date/Time Entered: 31 Jan 2019 @ 1200** |
| **Provider:** | BOGWU,JENNIFER | |
| **Location:** | HOUSTON TX VAMC | |
| **Status:** | ACTIVE | |
| **Comments:** | -- | |

MEDICAL CONFIDENTIAL