UNITED STATES DITRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CHLOE BAKER**<br>*Plaintiff*<br>v.<br><br>**LONE STAR LEGAL AID**<br>*Defendant* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO. 4:20-CV-03870** |

<u>DECLARATION IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY</u>

<u>JUDGEMENT</u>

TABLE OF CONTENTS

TABLE OF AUTHORITIES

NATURE OF DISPUTE AND PROCEEDINGS

FACUTAL BACKGROUND

ISSUES REQUIRING RESOLUTION

STANDARD OF REVIEW

ARGUMENT

1. Plaintiff exhausted all administrative remedies to the best of her knowledge within the organization as well as with the Equal Employment Opportunity Commission.

2. Defendant knew of issues and did not offer proper prevention and investigation which subjected Plaintiff to an increasingly hostile work environment and instances of harassment.

3. Defendant failed to abide by the Collective Bargaining Agreement

4. Defendant retailed against Plaintiff in treatment and later termination after her complaint to supervisors was addressed.

5. Plaintiff was subjected to adverse and disparate treatment.

CONCLUSION

CERTIFICATE OF SERVICE

CERTIFICATE OF CONFERENCE

TABLE OF AUTHORITIES

Cases

Beard v. Flying J, Inc.

266 F.3d 792, 798 (8th Cir. 2001)

Burlington Industries, Inc. v. Ellerth,

524 U. S. 742, 761

DeGrace v. Rumsfeld

614 F.2d 796, 803 (1st Cir.1980).

Diaz v. Swift-Eckrich, Inc.

318 F.3d 796, 801 (8th Cir. 2003)

Dowd v. United Steelworkers Local 286

253 F.3d 1093, 1101 (8th Cir. 2001) (

MERITOR SAVINGS BANK v. VINSON

United States Supreme Court No. 84-1979 (1986)

Robinson v. Jacksonville Shipyards, Inc.

760 F. Supp. 1486, 1530 (M.D. Fla. 1991)

Rodgers v. Western Southern Life Insurance Company

12 F.3d 668, 673-674 (7th Cir.1993

Snell v. Suffolk County

782 F.2d 1094, 1104 (2d Cir.1986).

VANCE v. BALL STATE UNIVERSITY

United States Supreme Court (2013)

Vance v. Southern Bell Tel. & Tel. Co.

863 F.2d 1503, 1510 (11th Cir.1989)

Williams v. City of Kansas City, Mo.

223 F.3d 749, 753 (8th Cir. 2000) ("

Statutes

42 U.S. Code § 12101

42 U.S. Code § 12112

42 U.S. Code § 12111

42 U.S. Code § 2000e–2

Rules

Fed. R. Civ. P. 56

Regulations

29 CFR § 1601.6

29 CFR § 1601.12

29 CFR § 1601.28

UNITED STATES DITRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| **CHLOE BAKER**<br>*Plaintiff*<br>v.<br><br>**LONE STAR LEGAL AID**<br>*Defendant* | § § § § § § § § § § § § | CIVIL ACTION NO. 4:20-CV-03870 |

<u>DECLARATION IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY</u>

<u>JUDGEMENT</u>

Plaintiff, Chloe Baker, ("Plaintiff", "Ms. Baker,") asks the court to deny Defendant's, Lone Star Legal Aid, ("Defendant,") Motion for Summary Judgement due to the genuine disputes and facts of this case as it relates to Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990.

NATURE OF DISPUTE AND PROCEEDINGS

After receiving a right to sue from the EEOC, Plaintiff filed suit against Defendant. On January 4, 2022, the Court recommended that Defendant's Second Motion to Dismiss (Dkt. 50) be denied.

It was in response to Plaintiff's Amended Complaint (Dkt. 17) filed on February 23, 2021, outlining the adverse treatment, hostile work environment, harassment, and retaliation endured by Ms. Baker.

## FACTUAL BACKGROUND

Plaintiff was sought out and hired by Christa Mills as a permanent hire paralegal. Due to the nature of funding, Ms. Baker was constantly placed on temporary assignments in cooperation with Defendant's need to exhaust certain grants. After each agreement ended, Defendant would place Plaintiff on a different source of funding to sustain her permanent salary. (Exhibit K).

Plaintiff began participating in protected activity as early as October of 2018 when other coworkers began calling her, "girl," in the office. This spread to the note taking system. (Exhibit B). This included voicing and emailing concerns about adverse treatment, lack of supplies to complete normal job functions, and hostile work environment.

Defendant's isolated Plaintiff at a remote office without things and equipment outlined in Collective Bargaining Agreement. The solution was to give Plaintiff authority to workflow secretarial tasks to Anna Martinez who was at the main office with such supplies. Plaintiff had already made complaints about how Anna Martinez would say things such as Plaintiff, "Kissed butt," and would spread false accusations about Plaintiff. After Plaintiff was given authority to workflow Anna Martinez, Martinez would purposely delay tasks which would affect the work produced by Plaintiff.

Sonia Lopez testified she knew nothing of the work dynamic before January 3, 2018 (Exhibit R) however she was emailed when things such as this would happen. (EXHIBIT D)  Plaintiff suffered from a materially adverse change in the terms or conditions of employment because of the employer's actions.

After Plaintiff's complaints of interoffice dynamics, the environment worsened because there was no reprimand to the perpetrators. (Exhibit H). Plaintiff went to work each day without expectation of fair treatment. Defendant failed to conduct thorough and fair investigations into all complaints or take prompt and appropriate remedial steps. (Exhibit R.) These actions or inactions result in liability for the employer. It was the same action or inaction that resulted in a hostile and intolerable environment that affect the well-being of Plaintiff and the services of the clients.

After the inaction of the employer coworkers began to refer to Plaintiff in derogatory manners in client notes. The perpetrators admitted that this was done to be mean spirited. (Exhibit L).

Another email was sent to Sonia Lopez in the same manner as other complaints, but on January 3, 3019, this email was forwarded to Ernest Brown and Pamela Sootodeh as an "official complaint," although it was in the same format as earlier complaints. (Exhibit J). After Pamela Sootodeh and Earnest Brown was made aware of my complaints, my worker agreements were no longer renewed as they were before due to my permanent hire status.  (Exhibit Q)

On January 22, 2019, Plaintiff was placed on psychiatric bed rest due to the stress of being assigned 41 new workflows without proper equipment to complete them. (Exhibit doctors note) (Exhibit R).

Sonia Lopez admits that HR was not involved in any regard until after termination regardless of the manner and frequency of complaints although she knew she was supposed to. (Exhibit Sonia deposition). Defendants did not explain reporting process nor keep Plaintiff in the loop regarding investigation.

When investigation concluded, Plaintiff was terminated without a renewal within a 10-minute proximity No other disciplinary action was taken regarding compliant (Exhibit H).

Plaintiff filed an inquiry then compliant with EEOC as early as February 19, 2019, and received a right to sue.

## ISSUES REQUIRING RESOLUTION

1. Plaintiff was subjected to hostile environment, harassment, and retaliation due to Plaintiff being a part of many protected classes.
2. Defendant knew of hostile environment and did not take steps to reprimand or correct.
3. Defendant failed to abide by Collective Bargaining Agreement and accommodate as it relates to that document as well as Plaintiff's disability conditions.
4. Defendant terminated Plaintiff as an act of retaliation.

## STANDARD OF REVIEW

Summary judgement is only appropriate if there is no genuine issue of material fact. If there is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

## ARGUMENT

Defendant knew of racial tensions in office and did not do anything to stop it from happening. Had it not been for my internal compliant reaching the Deputy Director's desk, my worker agreement would've been renewed like each time before due to my permanent hire status.

1. Plaintiff exhausted all administrative remedies to the best of her knowledge within the organization as well as with the Equal Employment Opportunity Commission.

Each time that the Plaintiff was subjected to hostility, she would report to her then manager, Christa Mills. When Christa Mills left the organization suddenly due to an audit, Sonia Lopez became Plaintiff's supervisor.

Plaintiff would bring things up verbally in meetings, confront the harassers head on, and would send emails to immediate supervisors as frequently about not only hostility, but the working conditions at the Michael E. DeBakey remote location that she was working at. It went against her Collective Bargaining Agreement, and she wanted resolution.

When her compliant reached the desk of the Deputy Director, she was terminated.

29 CFR § § 1601 states, "The Commission shall receive information concerning alleged violations of title VII, the ADA, or GINA from any person. Where the information discloses that a person is entitled to file a charge with the Commission, the appropriate office shall render assistance in the filing of a charge." Plaintiff spoke to EEOC on many occasions as early as February 2019 to be granted right to sue. It was the act of the intake investigator who did not check the proper box in his system to constitute a charge although it was the intent of the Plaintiff.

According to 29 CFR § 1601.12, the contents of a charge should contain (1) The full name and contact information of the person making the charge (2) the full name and contact information of the person against whom the charge is made, if known (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices (4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be.

A charge may be amended to cure defects and omissions, including failure to verify, and will relate back to date that it was first received.

In the end, the EEOC issued a right to file suit to Plaintiff.

2. Defendant knew of issues and did not offer proper prevention and investigation which subjected Plaintiff to an increasingly hostile work environment and instances of harassment.

According to the Lone Star Legal Aid Personnel Manual, sufficiently egregious/indicative of moral turpitude actions including fraud and client, or abusive behavior is punishable by termination. All forms of harassment are not to be tolerated.

In October 2018, a coworker falsely accused Plaintiff of illegally giving advice to an applicant before they became a client. This was fraud and went unpunished. It was brought up to Plaintiff's immediate supervisors. At this point, office members began to refer to Plaintiff verbally as, "girl/gal."

The personnel handbook also states that Lone Star Legal Aid expects employees to perform their duties in a competent and efficient manner and to conduct themselves in an appropriate manner while filling duties. In addition to other enumerated performance standards, the quality of legal services are rendered to Lone Star Legal Aid clients shall be a primary concern employees' performance of duties she never plays a client in jeopardy of not obtaining his or her legal rights or remedies.

In November 2018, another co-worker refused a workflow from Plaintiff. This caused a deadline to be missed for the client of Lone Star Legal Aid. The same co-worker placed false claims in an email stating she did not know how to mail things off and the Plaintiff who assigned this workflow would have to come do it herself. The co-worker knew at that point

with everything leading up to that she had offended Plaintiff and even noted so. Sonia Lopez knew of this incident and knew Plaintiff was uncomfortable in her work environment that was continually getting more hostile.

Harassment includes discriminatory intimidation insult and ridicule. The conduct has a purpose or effect of creating an intimidating hostile or offensive work environment; or has the effect of unreasonably interference with an individual's work performance causing adversely effects on individuals employment opportunities.

According to the Personnel Handbook, Lone Star Legal Aid employees should receive disciplinary action for, "(4) dishonesty (8) discourteous offensive threatening or intimidating conduct in dealing with clients, employees, or the public space (9) refusal to do work reasonably expected (9) immoral conduct or indecency on Lone Star Legal Aid property or while conducting Lone Star Legal Aid business and any other gross behavior."

In November and December, Intake Specialist, Anna Martinez, who is still employed by Defendant, told everyone in the office that Plaintiff, "kissed butt."

This is the same co-worker who has made false allegations that Plaintiff would not be at work or in her office. Sonia Lopez's assistant sent a memo to Plaintiff attempting to take away pay based on allegations. Sonia Lopez was aware. (Exhibit R)

When actions are not reprimanded, then the employer tacitly condones the inappropriate conduct. "An employer cannot stand by and permit an employee to be harassed by his coworkers." DeGrace v. Rumsfeld, 614 F.2d 796, 803 (1st Cir.1980). This standard places a reasonable duty on an employer who is aware of discrimination in the workplace to take reasonable steps to remedy it. Snell v. Suffolk County, 782 F.2d 1094, 1104 (2d Cir.1986).

Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). "An employer creates a hostile work environment if: (1) the employee is a member of a protected group; (2) the employee is subjected to unwelcome harassment; (3) a causal nexus exists between the employee's membership in the protected group and the harassment; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial action."

Sonia Lopez went on recorded and stated that Plaintiff was the only African American paralegal in the unit. (Exhibit R)

Co-workers attempted to get clients and applicants to file grievances on Plaintiff.

On January 22, 2019, Plaintiff was assigned 40 extra workflow tasks (Exhibit R) which had a major effect on the employee's psychological well-being. This is relevant in

determining whether the plaintiff found the environment abusive. MERITOR SAVINGS BANK v. VINSON (1986)

Defendant had a duty to report harassment to its internal HR for immediate action and neglected to do so at every chance creating a space for hostility. Pamela Sootodeh is not HR, nor does she know the proper policy, yet she carried out actions as if she were. (Exhibit Q) Pamela Sootodeh also states that because of the compliant, Defendant decided to end my Temporary Worker Agreement (Exhibit Pam)

In Earnest Brown's Declaration (Exhibit P) he states that extra training took place. Sonia disputes this in her deposition (Exhibit R)

3. Defendant failed to abide by the Collective Bargaining Agreement
Elements of a hostile work environment include biased assignments and denying needed supplies.
Sonia Lopez denies that Michael E. DeBakey was Plaintiff's assignment (Exhibit R). However, Plaintiff was stationed there daily and paid mileage for her work. This was a remote location where Plaintiff was essentially isolated from most staff meetings, other co-workers, and needed equipment to do the job at hand. 42 usc 12101 (a)(2) historically, society has tended to isolate and segregate individuals with disabilities

While there, many terms of her Collective Bargaining Agreement were violated. The violations are as follows: (14.1) a one-hour lunch break not included in the eight hours is to be observed by each employee and employee so not take a lunch break before signing in the morning and employee shall not sign out at the end of the workday for lunch employees are entitled to two, twenty-minute breaks, each working day scheduled by the supervisor.

Sonia Lopez and Ernest Brown were made aware that due to the nature of the assignment at Michael E. DeBakey and not being relieved, I could not step away for lunch breaks or breaks at all. Sonia Lopez suggested that I go against the Collective Bargaining Agreement and leave early on days that I could not take lunch.

"(19.1) working conditions Lone Star Legal Aid shop of a decent safe, healthy, and professional working conditions the employer shall provide each case handle with a private office suitable for the performance of his or her duties a private interview area shall be provided for those employees who do confidential client interviews and intakes.

(19.2) Lunch facilities: The employer shall provide employees with an adequate lunchroom we should include effort refrigerator paper towel and microwave

(19.4) Supplies: the employer shall provide adequate and workable equipment and supplies for professional operation for each unit/office." (

This was not the case at Michael E. DeBakey remote location where Plaintiff was assigned on a day to day. Sonia Lopez and Ernest Brown were made aware that Plaintiff lacked a telephone, printer, scanner, mail room, and lunch facilities and did not remedy the situation. They had no reason for 42 U.S. Code § 12112 (5)(A)

"not making reasonable accommodations to the known physical or mental limitations of an otherwise <u>qualified individual</u> with a <u>disability</u> who is an applicant or <u>employee,</u> unless such <u>covered entity</u> can demonstrate that the accommodation would impose an <u>undue hardship</u> on the operation of the business of such <u>covered entity;</u>"

4. Defendant retailed against Plaintiff in treatment and later termination after her complaint to supervisors was addressed.

To establish a retaliation claim, the plaintiff must prove that she was engaged in a protected activity, such as complaining about the harasser's conduct or confronting the harasser, and that as a result she suffered adverse employment action. Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir.1997).

In October of 2018, Plaintiff began making complaints about the office dynamics. She was being blamed for things that she had not done and could've been done by others to show her in a bad light. Plaintiff noted in Exhibit B that she did confront her harasser.

The following month, Plaintiff was moved to isolation at Michael E. DeBakey where her Collective Bargaining Agreement was not being upheld and was, ""a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," Burlington Industries, Inc. v. Ellerth, 524 U. S. 742, 761).

After months of incidents happening, Plaintiff reporting, and no disciplinary action being taken, Plaintiff continued with emailing supervisors and alerting them of the inter-office dynamics. They were made fully aware.

It was not until January 3, 2019, when my complaints were paid attention to. After this compliant, my worker agreements were not renewed although I was a permanent hire. (Exhibit A). Furthermore, Defendant concluded that they did not find anything in their investigation.

Had it not been for my compliant reaching the desk of Ernest Brown and Pamela Sootodeh, I would still be employed by Defendant. Defendant's claim that after every Temporary Worker Agreement, there is termination, and the employee must reapply each time. (Exhibit Q). However, Plaintiff did not go through this process and has multiple Temporary Worker Agreements on file.

Pamela Sootodeh also stated on the record that temporary employees do not have a salary (Exhibit Q). However, Plaintiff was on salary which further shows Defendant hired her as a permanent employee.

5. Plaintiff was subjected to adverse and disparate treatment.

"The prima facie showing in a hostile environment case is likely to consist of evidence of many or very few acts or statements by the defendant which, taken together, constitute harassment." Vance v. Southern Bell Tel. & Tel. Co., 863 F.2d 1503, 1510 (11th Cir.1989).

Plaintiff's treatment was so adverse that she was put on psychiatric bed rest due to work related stress resulting from a combination of "(1) an increased workload (2) use of derogatory and racially offensive language." Rodgers v. Western Southern Life Insurance Company, 12 F.3d 668, 673-674 (7th Cir.1993).

Williams v. City of Kansas City, Mo., 223 F.3d 749, 753 (8th Cir. 2000) ("While much of this evidence is generally innocuous, when considered in its totality it supports [the plaintiff's] interpretation.")

It became clear to Plaintiff what the motivation behind the disparate treatment was when her race was continuously pointed out followed by actions to sabotage her work and reputation followed by termination.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgement should be denied.