# EXHIBIT A

Requested By: Christa R. Mills      Title: Managing Attorney

Unit: Military and Veterans Unit      Date: April 2, 2018

## Aloha Form

Complete this form and attach it to an email sent to "Aloha" for all employees who are newly hired, promoted, demoted, transferred, or whose employment is ending. The sooner this form is emailed to Aloha, the sooner necessary changes can be made. Be sure to copy the unit's (units') Supervising Attorney(s) on the Aloha email.

**Employee's Name:** Chloe Baker

**Employee Name Change Request:** _____

**Personnel Action:** ☑ New Hire - Permanent ☑ Full Time ☐ Part Time: Hrs/Wk 40 Duration: _____ mo

☐ New Hire - Temporary ☐ Full Time ☐ Part Time: Hrs/Wk _____ Duration: _____ mo

☐ Internship or Fellow: Hrs/Wk _____ Duration: _____ mo

☐ Promotion ☐ Demotion ☐ Transfer: Former Unit _____ New Unit _____

☐ Resignation ☐ Termination

**Employee's New Job Title:** Paralegal II

**Effective Date:** April 2, 2018      **Unit:** Military and Veterans Unit

**Employee's Workspace Location:** 2929 McKinney Street, 2nd Floor

**Employee's Existing Phone Extension(s):** NONE

**Employee's Existing Email Groups:** NONE

**Technology:** ☑ Desktop PC ☑ Laptop PC ☑ Network Acct ☑ Email ☑ Phone ☑ Voicemail

☑ Remote Citrix Access ☐ Scanner ☐ Request Personal Scan Folder

☑ Preferred Printer Location: MVU-3511      ☐ Other: _____

☑ Add'l Hardware/Software Request: Pro Doc

☑ Reset Log-in/Password to system default: ☑ Voicemail ☐ Local Desktop

| Add to | Delete from | Item | Description, if needed | Effective Date |
|--------|-------------|------|------------------------|----------------|
| ☑ | ☐ | Email Group(s) | Military and Veterans Unit | April 2, 2018 |
| ☐ | ☐ | Phone Group(s) | | |
| ☑ | ☐ | PM Access | | |
| ☑ | ☐ | Voice Mail Access ☐ Redirect to Supervisor* | | |
| ☑ | ☐ | Email Access ☐ Redirect to Supervisor* | | |

**Furniture:** ☐ Desk, Type _____ ☐ Chair, Type _____

☐ Guest Chairs, Type/Number _____

☐ Bookcase, Size/Number _____

☐ Filing Cabinet, Type/Size _____ ☐ Other _____

**Security:** ☐ Alarm Code ☐ Front Door Key ☐ Unit Door Key ☐ Office Key ☐ Elevator Key

☑ Other: Requested Key and pass from Combined Arms

**Training:** ☑ PM ☑ LSLA Policies ☑ Cultural Sensitivity Training

☐ Other: _____

*When an employee's employment with LSLA ends for any reason, it is a good idea to redirect the employee's voice mail and email to a supervisor for a period of time to assure that no client's needs are overlooked during the transition.*

# EXHIBIT B

# LONE STAR LEGAL AID
## PERSONNEL ACTION MEMO

| Date | September 27, 2018 |
|------|--------------------|

| Name: Baker, Chloe | | Title: Paralegal II | |
|---|---|---|---|
| Exempt | Non Exempt   X | Office/Unit/Dept. : VOCA Grant-MVU Houston Branch Office | |
| Social Security # | 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 | Male | Female | X | Date of Birth | 6/18/1996 |
| Hire Date | 04/02/2018 | Entry Level Date: | Re-hire Date: |

## Employment Change End of Assignment

| New Hire | | Full Time | X | Part Time | | Contract | | Grant | X | Temporary | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Transfer | | Transfer to: | | | | Contract/Grant Name:  JCS/VOCA | | | | | |
| | | Transfer From: | | | | Beginning Date | | 07/01/2018 | | | |
| Position/Title Change | | | | | | Ending Date | | 09/30/2018 | | | |

## Compensation

| Annual Salary | $31,000.00 | | Hourly Rate: | | | Avg. Hrs Work | | 40 | |
|---|---|---|---|---|---|---|---|---|---|
| Annual Increment | Old Salary: | | New Salary: | | Step | 2 | Retro | Yes | No ☐ |
| Funding Source:  Texas OOG | | New: | | Effective Date | | | | | |
| Funding Source:  Change: | | | | Effective Date | | | | | |

## Termination of Employment

| Reason for Leaving | Quit with Notice | | Quit without Notice | | Laid Off | | Terminated | |
|---|---|---|---|---|---|---|---|---|
| | End of Assignment | x | | | | | | |
| Last Day Worked | September 30, 2018 | | | Eligible for Re-hire | | Yes ☐ | No ☐ |
| Benefits Given | All benefits, including earned leave, health insurance, and if applicable, 403(b) benefits have been transferred to Ms. Baker's 90 day Temporary Worker Agreement. | | | | | | | |

## COMMENTS:

| |
|---|

Employee: _____ Chloe Baker   Date: 9/28/18

Executive Approval: _____ SC.   Date: 10/8/18

## HUMAN RESOURCES

HRB Created:  09/27/2018 HRB Entered: _____ Payroll Received: _____

0114

LON0057



# Lone Star Legal Aid
## TEMPORARY WORKER AGREEMENT
### (Non-Exempt)

**WORKER'S NAME:** BAKER, CHLOE M.

**Social Security #:** (

**Funding Source:** TEXAS OOG

## ASSIGNMENT

As a Temporary worker with Lone Star Legal Aid you will be asked to perform the following job duties: **Paralegal 2**. Your assignment will be in the following Lone Star Legal Aid Office: **MVU/Houston Branch Office**. This assignment will start on the following date: **July 1, 2018** and end on the following date: **September 30, 2018.** The VOCA's Project Director and Managing Attorney of the above Lone Star Legal Aid office will assign your work duties. There is no guarantee of a minimum number of work hours or work days during the term of this agreement. This agreement may be cancelled with or without notice -- with or without cause.

## COMPENSATION

You will be paid pursuant to the LSLA **Paralegal 2** Salary Schedule Step 2 **$31,000.00.** You will be paid semi-monthly (on the 15th and last working day of the month).  State and federal taxes will be withheld from your check.

## BENEFITS

As a Contract employee temporary worker you are not a regular LSLA employee.  However under the terms of this agreement, you will be entitled to leave benefits.  This includes annual, sick and personal business leave and holiday pay; you will be also entitled to fringe benefits which includes group medical insurance, life insurance, and 403 (b) when eligible.

## POLICIES AND PROCEDURES

As a temporary worker, you are expected to follow all LSLA policies and procedures. In the course of this assignment you may be working with client related information.  Such information must be treated as confidential and may not be used for any purposes outside of LSLA, divulged to others, or used for personal benefit at any time or in any manner.

## ACCEPTANCE OF OFFER

There is no guarantee for further work after this assignment period ends. This relationship is temporary and voluntary. Either party may terminate the work relationship at any time, with or without notice, with or without cause or reason.

I agree to the above-stated terms and conditions:

_____
Worker Signature

_____
8/2/18  Date

**Approval**

_____
Project Manager or Unit Manager or Supervisor

_____
august 2, 2018  Date

_____
Deputy Director or Designee

_____
8/3/18  Date

Lone Star Legal Aid, 1415 Fannin Street, Houston, Texas 77002
Offices in Angleton, Beaumont, Belton, Bryan, Galveston, Houston, Longview, Nacogdoches, Paris, Texarkana, Tyler, Waco

**LON0060**

# LONE STAR LEGAL AID
# PERSONNEL ACTION MEMO

| Date | April 4, 2018 |
|---|---|

| Name: Baker, Chloe M. | | Title: **Paralegal II** | | | | |
|---|---|---|---|---|---|---|
| Exempt ☐ | Non Exempt  X | Office/Unit/Dept.: **Texas Veterans Commission** | | | | |
| Social Security # | 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 | Male | Female | X | Date of Birth | 06/18/1996 |
| Hire Date | **April 2, 2018** | Entry Level Date: | | Re-hire Date: | | |

## Employment Change

| New Hire | x | Full Time | x | Part Time | | Contract | | Grant | X | Temporary | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Transfer | | Transfer to: | | | | Contract/Grant Name: | | | | | |
| | | Transfer From: | | | | Beginning Date | | *04/02/2018 | | | |
| Position/Title Change | | | | | | Ending Date | | 06/30/2018 | | | |

## Compensation

| Annual Salary | $ 28,000.00 | | Hourly Rate: | | Avg. Hrs Work | | | 40 | |
|---|---|---|---|---|---|---|---|---|---|
| Annual Increment | Old Salary: | | New Salary: | | Step | 1 | Retro | Yes ☐ | No X |
| Funding Source:   *The Veterans Commission New: | | | | | Effective Date | | 04/02/2018 | | |
| Funding Source:  Change: | | | | | Effective Date | | | | |

## Termination of Employment

| Reason for Leaving | Quit with Notice | | Quit without Notice | | Laid Off | | Terminated | |
|---|---|---|---|---|---|---|---|---|
| | End of Assignment | | | | | | | |
| Last Day Worked | | | | | Eligible for Re-hire | | Yes ☐ | No ☐ |
| Benefits Given | | | | | | | | |

## COMMENTS:

*Ms. Chloe M. Baker's duration of employment with Lone Star Legal Aid (LSLA) is subject to the continuation of the Texas Veteran Commission Project extension and/or renewal tied to this position.  Ms. Baker should not expect future employment at the end of the relevant grant term. Under her course of employment with LSLA, she will be entitled to leave and fringe benefits which includes group medical insurance, and 403(b) when eligible.

Employee: _____   Date: 4/4/18

Executive Approval: _____   Date: 6/22/1_

## HUMAN RESOURCES

HRB Created:        HRB Entered: _____   Payroll Received: _____

0114

**LON0061**



# Lone Star Legal Aid
## TEMPORARY WORKER AGREEMENT
### (Non-Exempt)

**WORKER'S NAME: Baker, Chloe M.**

**Social Security #: XXX-XX-6409  Funding Source: Texas Veteran Commission**

## ASSIGNMENT

As a Temporary worker with Lone Star Legal Aid you will be asked to perform the following job duties: Paralegal II Your assignment will be in the following Lone Star Legal Aid Office: **Houston Branch Office**. This assignment will start on the following date: **April 2, 2018** and end on the following date: **June 30, 2018**. The Texas Veteran Commission Project Director of the above Lone Star Legal Aid office will assign your work duties. There is no guarantee of a minimum number of work hours or work days during the term of this agreement. This agreement may be cancelled with or without notice -- with or without cause.

## COMPENSATION

You will be paid pursuant to the LSLA **Paralegal II** Salary Schedule **Step 1, $28,000.00.** You will be paid semi-monthly (on the 15th and last working day of the month). State and federal taxes will be withheld from your check.

## BENEFITS

As a Contract employee temporary worker you are not a regular LSLA employee. However under the terms of this agreement, you will be entitled to leave benefits including annual, sick and personal business leave and holiday pay. You will be also entitled to fringe benefits which includes group medical insurance, life insurance, parking, and 403 (b) when eligible.

## POLICIES AND PROCEDURES

As a temporary worker, you are expected to follow all LSLA policies and procedures. In the course of this assignment you may be working with client related information. Such information must be treated as confidential and may not be used for any purposes outside of LSLA, divulged to others, or used for personal benefit at any time or in any manner.

## ACCEPTANCE OF OFFER

There is no guarantee for further work after this assignment period ends. This relationship is temporary and voluntary. Either party may terminate the work relationship at any time, with or without notice, with or without cause or reason.

I agree to the above-stated terms and conditions:

_____
Worker Signature

4/4/18
Date

### Approval

_____
Project Manager or Unit Manager or Supervisor

april 4, 2018
Date

_____
Deputy Director or Designee

6/20/18
Date

# EXHIBIT C

110   00:11:25.830 --> 00:11:36.390 Pamela Sotoodeh: Under the CBA once the job was posted it would be seven days so to allow internal candidates to apply for it, and then it was posted on one of our platforms.

111   00:11:39.330 --> 00:11:41.400 K. E. Bradley Law: And for.

112   00:11:47.100 --> 00:11:53.490 K. E. Bradley Law: And when you posted a job, and it did it already have kind of a set salary figure as well with it.

113   00:11:54.450 --> 00:11:54.990 Pamela Sotoodeh: No.

114   00:11:55.410 --> 00:11:56.190 K. E. Bradley Law: Did not okay.

115   00:11:57.330 --> 00:12:03.390 K. E. Bradley Law: But there is a salary associated with the CBA for most of the most of your CBA positions correct.

116   00:12:03.750 --> 00:12:04.320 Pamela Sotoodeh: that's correct.

117   00:12:05.370 --> 00:12:05.760 Pamela Sotoodeh: and

118   00:12:06.990 --> 00:12:11.460 K. E. Bradley Law: Were those positions necessarily tied to funding at that particular point?

119   00:12:14.040 --> 00:12:15.060 Pamela Sotoodeh: What do you mean by that?

120   00:12:15.690 --> 00:12:23.430 K. E. Bradley Law: Were there you know, basically, if you opened a position, were they tied directly to a funding source or grant or something to that nature.

121   00:12:24.510 --> 00:12:31.140 Pamela Sotoodeh: Yes, there would need to be funding to they will need to be funding available in order to post that that position.

122   00:12:31.350 --> 00:12:40.290 K. E. Bradley Law: Right, but if you were, I guess, my question is, if you posted a position would it that position be tied directly to any particular grant?

123   00:12:41.340 --> 00:12:41.940 Pamela Sotoodeh: Yes.

124   00:12:42.390 --> 00:12:42.750 K. E. Bradley Law: It would. Okay.

125   00:12:44.940 --> 00:12:45.300 K. E. Bradley Law: And--

126   00:13:01.710 --> 00:13:07.920 K. E. Bradley Law: And in posting positions, for if they were listed as full time what did that--

127  00:13:09.000 --> 00:13:13.800 K. E. Bradley Law: What all did that mean, as far as Lonestar is concern full time positions.

128  00:13:14.700 --> 00:13:23.040 Pamela Sotoodeh: Regular regular full-time as a 40-hour week full-time position was not a temporary position that had a beginning date and an ending date.

129  00:13:27.990 --> 00:13:35.040 K. E. Bradley Law: So, if the description said it was full time it would not the basically there wouldn't be any end date associated with that particular.

130  00:13:36.420 --> 00:13:36.960 K. E. Bradley Law: position.

131  00:13:37.800 --> 00:13:41.430 Pamela Sotoodeh: If it was a regular full time there would be no ending date per se.

132  00:13:48.300 --> 00:13:55.770 K. E. Bradley Law: And did all positions come with benefits that you offer only full-time positions or what would a qualification for benefits.

133  00:13:56.100 --> 00:13:57.030 Pamela Sotoodeh: Benefit—I--

134  00:13:57.540 --> 00:13:58.140 K. E. Bradley Law: Meaning--

135  00:13:59.910 --> 00:14:02.070 K. E. Bradley Law: Time-off.

136  00:14:03.120 --> 00:14:05.250 K. E. Bradley Law: Sick leave, vacation time all that good stuff.

137  00:14:08.040 --> 00:14:14.820 Pamela Sotoodeh: If you are regular full time or if you're temporary we were providing we are providing benefits, including paid time off.

138  00:14:15.960 --> 00:14:19.800 K. E. Bradley Law: And those benefits the same regardless of whether you are full time or temporary.

139  00:14:20.850 --> 00:14:21.420 Pamela Sotoodeh: Yes.

140  00:14:26.940 --> 00:14:28.350 K. E. Bradley Law: I'm sorry I'm going to go back.

141  00:14:30.480 --> 00:14:35.670 K. E. Bradley Law: To something I meant to ask you earlier, can you give your educational background for me.

# EXHIBIT D

# Lone Star Legal Aid Employee Work Schedule

The information provided on this form is pursuant to Section 14 of the Attorney and Support Staff Collective Bargaining Agreements.  This document may be used by Unit Supervisors for discussion regarding work scheduling.

**Office Hours**
Lone Star Legal Aid office hours are 8:00 am through 5:00 pm, Monday through Friday.  Employees may flex their work hours between the hours of 7:00 am and 6:00 pm during the work week; however, an employee's work schedule may not be modified more than once every 3 months. This work schedule must be approved in advance by Office Managing Attorney or Unit/ Manager.

**Employee Work Schedule**
Full time employees are expected to work an 8-hour day and a 40-hour week.  The 1-hour lunch break may not be counted as part of the 8-hour work day. For more information regarding employee work schedules, see Section 14 of the Lone Star Legal Aid Collective Bargaining Agreements.

## SECTION 1 – EMPLOYEE INFORMATION

| | |
|---|---|
| **Employee Name** | Chloe Baker |
| **Title** | Paralegal II |
| **Unit/Department/Office** | MVU |
| **Work Telephone Number** 713-652-0077 | **Telephone Extension:** 1013 |

**Job Status**

Full-Time ☑   Part-Time ☐ % time____

## SECTION 2 – EMPLOYEE WORK SCHEDULE

| | Monday | Tuesday | Wednesday | Thursday | Friday |
|---|---|---|---|---|---|
| **Start Time** | 7 AM | 7 AM | 7 AM | 7 AM | 7 AM |
| **End Time** | 4 PM | 4 PM | 4 PM | 4 PM | 4 PM |
| **Total Number Hours** | 8 | 8 | 8 | 8 | 8 |

Is this a 4-day work week   Yes____   No ✓

**Total Work Hours per Week** 40

## SECTION 3 – WORK SCHEDULE AGREEMENT

| | | Date | |
|---|---|---|---|
| **Employee** | | | 9/10/18 |
| **Supervisor** | Brenda Mills | | 9/10/18 |

*Return the original copy of this form to the HR Department, 1415 Fannin Street, Houston, Texas 77002*

LON0035

# EXHIBIT E

**Baker, Chloe**

| | |
|---|---|
| From: | Anna Martinez |
| Sent: | 11/20/2018 08:41 AM |
| To: | Chloe Baker |
| CC: | |
| BCC: | |
| Attachments: | |
| Priority: | Normal |
| Request: | None |
| Security: | Normal |
| Deliver After | 0  days(s) |
| Subject: | Form |

do not know what a form 21-22 is. you'll have to do this one

Note - Jenkins, Eugene, Jr - [Intake Note] 

ofc. Took originals and scanned into pm. Provided Mr. J with copies of everything. Gw CB2 re signed papers.

**10/18/2018 02:13 PM (CBAKER2)** Reviewed documents signed by C, emailed to ogcaccreditationmailbox@va.gov. Dropped email into groupware.

**10/29/2018 09:58 AM (CBAKER2)** Received response via email stating I need to mail in VA 21-22a, mailed 10/29/18 Houston Regional Benefit Office 6900 Almeda Road Houston, TX 77030

**10/31/2018 4:59:13 PM (AMARTINE)** received via return mail, letter sent 10/4/2018 to A, scanned and entered into PM, gave to CBaker.

**11/16/2018 4:22:02 PM (CBAKER2)** Received VM from A, MN2's signature is needed in box's 16 and 17. Email MN2.

**11/19/2018 9:55:25 AM (CBAKER2)** Received VM from A, gave him a call back letting him know that MN2 signed box 16 and 17. Uploading to PM. WF AMaritnez to mail out form to Houston Regional Benefit Office 6900 Almeda Road Houston

**11/19/2018 08:37 AM (AMARTINE)** received via mail from Department of Veterans Affairs, scanned and entered into PM, staff w/ MNolan said to place on CBaker's desk.

**11/20/2018 10:09:35 AM (CBAKER2)** Received email via AMartinez that she was not capable of mailing off form 21-22a that I had attached to initial email and that I needed to come and do it myself. Left post at VA (with MN2 there) to come to CAX and mail off signed 21-22a. Email MN2 and SL to notify.

11/21/2018 10:15 AM (AMARTINEZ) Staffed with CB who was rather upset and ==took offense== to the fact that I questioned what the 21-22a form was since I was not familiar with this type of form, and I did not want to be responsible for ==mailing== something to a client that was not supposed to go out before checking exactly what the paperwork was. Due to my questioning of this paperwork, CB felt obliged to personally ==come to combined arms and do it herself.==

**11/20/2018 10:40:37 AM (CBAKER2)** Form 21-22a mailed off 11/20/18 file maintenance

**11/20/2018 4:31:22 PM (CPAULDIN)** Review of matter per SL

**11/21/2018 09:54 AM (MNOLAN2)** T/C from CBa wanting clarification on this matter. Client received a denial letter on May 2, 2018 denying him 3 (bilateral hearing loss, cervical spine injury, and lumbar spine injury) of 4 veteran disability claims he submitted. Client needs assistance in preparing his appeal documents to be submitted to the VA. Client must first submit a Notice of Disagreement which notifies the VA that he disagree with its decision and plan on submitting an appeal. Client must submit his NOD by May 2, 2019 - one year from the date of the denial letter. With the appeal comes drafting an affidavit describing in detail Client's medical condition and how it is affecting him daily, character letters (from church members, family members, who can attest to Client suffering from these conditions), submitting all medical records Client has in his possession, and organizing all of these documents to submit via CMRRR to the VA. Afterwards, Client would have to wait (wait

01/17/2019 09:42 AM

Note - Jenkins, Eugene, Jr. - [Intake Note]

time is up to 460 days now) on the VA's decision. Client went to the Longview Office on 08-30-18 (see note above) to drop off more documents and it was brought to my attention by Longview office that no CA was on file from Client's first visit with LSLA so this matter could possibly be Non-CSR'd. Spoke with CM on August 30, when it was brought to my attention, about this issue and what to do. I was told to go ahead and prepare the appeal for Client because I had already agreed to do so.

**12/6/2018 2:44:34 PM (MNOLAN2)** completing VA Form 21-0958 NOD to be mailed CMRRR to

Department of Veteran Affairs

Evidence Intake Center

P.O. Box 4444

Janesville, WI 53547-4444

01/17/2019 09:42 AM

Page 6

# M Gmail

Chloe Baker <chloembaker2014@gmail.co...

## FW: Re: Jenkins, Eugene/CBaker
1 message

**Chloe Baker** <CBaker2@lonestarlegal.org>
To: "chloembaker2014@gmail.com" <chloembaker2014@gmail.com>

Thu, Jan 17, 2019 at 8:56 AM

**From:** Sonia Lopez
**Sent:** Wednesday, November 21, 2018 7:44 AM
**To:** Chloe Baker
**Subject:** FW: Re: Jenkins, Eugene/CBaker
**Importance:** High

Good morning Chloe,

I found these on my desk in Houston and wasn't sure what services, if any, we had agreed to do for Mr.
Jenkins. Can you tell me what this form is about?

Sonia

2 attachments

Jenkins 21-22a.pdf
964K

Jenkins - Most Recent Case Notes.pdf
2763K

# EXHIBIT F

**Pamela Sotoodeh**

| | |
|---|---|
| **From:** | Pamela Sotoodeh |
| **Sent:** | Friday, January 04, 2019 6:27 PM |
| **To:** | Chloe Baker |
| **Cc:** | Ernest Brown; Pamela Sotoodeh |
| **Subject:** | FW: Concerns |

Dear Ms. Baker,

Mr. Brown is out of town to attend a conference next week and has asked me to communicate to you that he has received your January 3, 2018 email initially sent to Ms. Lopez, and that is attached below. Mr. Brown is accepting your email as a formal complaint. He has asked me to tell you that he will investigate this serious matter and will touch base with you regarding your concerns, as well as schedule a meeting with you. Since he is out of the office he may not be able to communicate with you until next Friday, January 11, 2019. At that time, he will call you and schedule a meeting.

We appreciate your patience.

Sincerely,

Pamela Sotoodeh
Director of Administration
Lone Star Legal Aid
P.O. Box 398
Houston, Texas 77001-0398
psotoodeh@lonestarlegal.org
(713) 652-0077

> **From:** Sonia Lopez <SLopez@lonestarlegal.org>
> **Date:** January 4, 2019 at 12:06:53 PM CST
> **To:** Chloe Baker <CBaker2@lonestarlegal.org>
> **Cc:** Ernest Brown <EBrown@lonestarlegal.org>
> **Subject: RE: Concerns**
>
> Hi there Chloe,
>
> I received your email and am forwarding it to our Deputy Director, Ernest Brown. You will be contacted soon.
>
> As for your travel reimbursements, I received the revised statements at the end of December after you and Lili went back and forth on them. I still have some questions on the parking, but I will submit them today for processing. Please, however, be aware that you might not receive the entire amount requested because there are no receipts for parking. Our Accounting Department will work out those details with you, and I would rather not delay my approval of your request any longer.
>
> I know you're out for the rest of the day and hope you get to feeling better.
>
> Talk soon.

1

**LON0026**

# EXHIBIT G

# Personnel Manual



# Lone Star Legal Aid

**April 2017**

LON0295

Employees are responsible for respecting the rights of their co-workers. If an employee believes he or she has been the subject of discriminatory harassment, the employee shall promptly report the matter to the Managing Attorney or Supervisor or the Human Resources Department. Employees represented by one of the Collective Bargaining Units may prefer to notify their union representative. If it is inappropriate or awkward to discuss the matter with the Managing Attorney, Supervisor, Human Resources Department or union representative, the employee may bypass one of these individuals and report the incident directly to the Chief Executive Officer or designee. Complaints regarding sexual harassment will be kept confidential to the maximum extent possible. All reports will be promptly investigated with due regard for the privacy of everyone involved. If LSLA determines that an employee has violated this policy, appropriate corrective action will be taken against the offending employee.

## Other Forms of Harassment_____

Harassment based on race, sex, color, religion, national origin, age, veteran status or disability is unacceptable and will not be permitted. LSLA expressly prohibits any form of harassment based on race, gender, religion, color, national origin, age, veteran status, marital status, or disability. Improper interference with the ability of LSLA employees, students, or volunteers to perform their expected duties will not be tolerated.

Harassment includes discriminatory intimidation, insult, and ridicule where the conduct has the purpose or effect of creating an intimidating, hostile, or offensive work environment; or has the purpose or effect of unreasonably interfering with an individual's work performance; or otherwise adversely affects an individual's employment opportunities. Harassing conduct may take the form of slurs, jokes, letters, e-mails, cartoons, or pictures regarding an employee's race, gender, religion, color, national origin, age, veteran status, marital status, or disability. Any employee found to have violated the Harassment Policy shall be subject to disciplinary action up to and including termination.

## Retaliation _____

LSLA prohibits any form of retaliation against any employee who, in good faith, reports an incident under this policy or assists in a complaint investigation. If an employee experiences retaliation after complaining of harassment or assisting in a complaint investigation, the incident must be reported promptly to the Chief Executive Officer, Deputy Director or designee. Complaints regarding retaliation will be kept confidential to the maximum extent possible.

27

# STANDARDS OF CONDUCT

## Restricted Activities_____

LSLA Policies, the Legal Services Corporation Act, Legal Services Corporation Regulations, and other funder grant conditions place limitations on certain activities by LSLA employees. Please see the LSLA Policy Manual, the LSC Act, and LSC Regulations. Violation of LSLA Policies, the LSC Act, LSC Regulations, or other funder grant conditions may result in discipline or discharge.

## Performance Standards_____

LSLA expects employees to perform their duties in a competent and efficient manner and to conduct themselves in an appropriate manner while performing their duties.

LSLA attorneys and employees working under their supervision shall abide by the Texas Disciplinary Rules of Professional Conduct in all legal matters. The ABA Standards for Providers of Civil Legal Services shall be considered as guidelines.

In addition to other enumerated performance standards, the quality of legal services rendered to LSLA clients shall be of primary concern. An employee's performance of duties should never place a client in jeopardy of not obtaining his/her legal rights or remedies, considering the Attorney's ethical and professional duties.

## Disciplinary Action _____

LSLA employees are expected to perform work assigned to them in a highly professional and competent manner. Poor performance will be identified during supervision and through periodic evaluations. Where appropriate, LSLA will provide additional supervision or training. Failure to improve poor work performance will result in disciplinary actions or termination.

LSLA employees shall conduct themselves in an appropriate manner when performing their duties. Disciplinary action may be taken against employees for misconduct, non-compliance or violation of LSLA employment standards, policies and procedures, or those imposed by LSLA funding sources. Disciplinary action may include written warnings, disciplinary probation, suspension, and termination of employment. Employees are expected to comply with the personnel policies and procedures contained in this Manual. The following examples describe some, but not all, actions that may lead to disciplinary action:

1. Intoxication or being under the influence of controlled substance drugs while at work; use or possession or sale of controlled substance drugs in any quantity while on LSLA premises except medications prescribed by a physician which do not impair work performance;
2. Intentional actions that endanger the life or safety of another person;

32

# COMPUTER POLICY

Computer equipment purchased by or donated to LSLA is the property of LSLA and is to be used for LSLA business. An LSLA employee's immediate Supervisor may give permission for personal use of LSLA computers during non-business hours.  Misuse of any equipment that will knowingly lead to damage or violations of safety rules is prohibited and will lead to disciplinary action.

## E-mail
_____

E-mail is a resource provided to the employees of LSLA for business communications only.  It is not to be used for personal or non-business communications. All electronic communications, both internal and external, using the LSLA e-mail system, both incoming and outgoing, resides on LSLA computer equipment and is therefore the property of LSLA.  LSLA reserves the right to monitor all e-mail found on LSLA computer equipment.  There is no expectation or guarantee of privacy for users of the LSLA e-mail system or LSLA computer equipment.  Any e-mail stored on LSLA equipment is subject to review by management.  E-mail will be maintained on the LSLA e-mail server for a reasonable time, but may be subject to deletion for technical reasons with no notice.

E-mail shall not be used for any communication that could be construed as discriminatory, harassing, obscene, or pornographic.  No communications that are derogatory or inflammatory about an individual will be permitted.  No abusive or profane language is to be used in any electronic communication originating from LSLA.  Any electronic communication to further an illegal activity will lead to disciplinary action and possible criminal charges.  No chain letters, forwarded advertisements, or mass distribution messages are allowed.

## Internet Usage
_____

Internet access is a resource provided to the employees of LSLA for business purposes only.  It is not to be used for personal or non-business reasons.  LSLA employees' who inadvertently connect to an Internet site that contains material that can be construed as obscene, pornographic, racist, violent, or otherwise offensive should immediately disconnect from that site.  Downloading of such material and sharing of such material is prohibited.  Downloading software without approval from the IT department is also prohibited.

LSLA reserves the right to monitor all Internet access using LSLA computer equipment.  There is no expectation or guarantee of privacy for users of the LSLA Internet connection or LSLA computer equipment.  Any information retrieved from the Internet and stored on LSLA equipment is subject to review by management and possible deletion, if appropriate.  Any use of the Internet to further an illegal activity will lead to disciplinary action and possible criminal charges.

## Software and Copyright
_____

LON0290

# EXHIBIT H

367   00:45:40.410 --> 00:45:42.300 Peter Goetschel: This this has been asked and answered.

368   00:45:47.610 --> 00:45:53.280 K. E. Bradley Law: If you would can you just say—is-- was there a concern about that at all.

369   00:45:54.090 --> 00:45:54.810 Sonia Lopez - Lonestar Legal Aid: Not at all.

370   00:46:02.940 --> 00:46:05.250 K. E. Bradley Law: What is the.

371   00:46:11.550 --> 00:46:15.600 K. E. Bradley Law: What's the ethnic makeup of your office at combined arms.

372   00:46:16.710 --> 00:46:17.760 K. E. Bradley Law: Well, what's the race.

373   00:46:18.780 --> 00:46:21.210 K. E. Bradley Law: What's the races individuals for this.

374   00:46:24.570 --> 00:46:26.610 Sonia Lopez - Lonestar Legal Aid: it's varied, we have a mix.

375   00:46:29.130 --> 00:46:30.660 Sonia Lopez - Lonestar Legal Aid: I don't know it right off the top of my--

376   00:46:30.660 --> 00:46:36.180 K. E. Bradley Law: Would it be fair to say that Ms. Baker is the only African American that works in that office?

377   00:46:38.370 --> 00:46:39.120 Sonia Lopez - Lonestar Legal Aid: At the time?

378   00:46:39.990 --> 00:46:40.560 K. E. Bradley Law: At the time, yes.

379   00:46:41.640 --> 00:46:42.810 K. E. Bradley Law: Would it be fair to say that--

380   00:46:44.430 --> 00:46:45.900 Sonia Lopez - Lonestar Legal Aid: No, I don't know, no.

381   00:46:46.740 --> 00:46:46.980 K. E. Bradley Law: So there were--

382   00:46:48.540 --> 00:46:50.670 K. E. Bradley Law: More African Americans that worked in that environment.

383   00:46:52.440 --> 00:46:58.260 Sonia Lopez - Lonestar Legal Aid: Yeah, I mean it's been a little while and I can't remember everybody's start dates I'm sorry but yes, there were.

384   00:46:59.820 --> 00:47:01.230 Sonia Lopez - Lonestar Legal Aid: So, I believe so.

# EXHIBIT I

615  01:18:28.620 --> 01:18:39.180 Sonia Lopez - Lonestar Legal Aid: I don't I don't know the details as far as you know, when she was provided any type of investigation or anything like that I do, however, know that she was on the worker agreement and.

616  01:18:40.770 --> 01:18:42.360 Sonia Lopez - Lonestar Legal Aid: She was being terminated.

617  01:18:43.080 --> 01:18:46.380 K. E. Bradley Law: So you knew at that point, on January 22nd she's going to be terminated.

618  01:18:46.770 --> 01:18:56.880 Sonia Lopez - Lonestar Legal Aid: I'd have to go back to the dates, I—I'm like I'm saying I don't know exactly but I knew that we would not have an employee right after the termination.

619  01:18:59.070 --> 01:19:06.930 K. E. Bradley Law: Okay, so it was already kind of predetermined even before this incident that Ms. Baker would not be continuing on with Lonestar.

620  01:19:07.710 --> 01:19:18.120 Sonia Lopez - Lonestar Legal Aid: I'd have to look at the dates, but normally we're told you know okay this person is going to give be given a 30-day extension or they're gonna your you know you have.

621  01:19:19.860 --> 01:19:22.590 Sonia Lopez - Lonestar Legal Aid: Their employment till X date and.

622  01:19:23.970 --> 01:19:30.510 Sonia Lopez - Lonestar Legal Aid: So, depending on you know what that date was that's as most of the insight I would have had at that time.

623  01:19:33.120 --> 01:19:46.890 K. E. Bradley Law: But basically, the reason that you didn't inquire more into I guess the well-being of Ms. Baker is because the termination was already kind of determined and you knew you're going to be swept that employee anyway, Is that correct.

624  01:19:48.150 --> 01:19:50.130 Sonia Lopez - Lonestar Legal Aid: Again, I need to go through the dates, but.

625  01:19:52.590 --> 01:19:55.590 Sonia Lopez - Lonestar Legal Aid: I think it's probably a good speculation.

# EXHIBIT J

**18.3.1 Contribution Waiver**: LSLA has the specific authority to waive or reduce the amount of any of the contributions if cost saving mechanisms instituted by the program result in a reduction of the overall cost of health insurance or if LSLA believes that the additional contributions are not necessary. Any waiver or reduction in any one year does not affect LSLA's rights to require the payments for dependent health coverage in succeeding years.

**18.4    Pension Plan**: LSLA contributes an amount equal to six percent (6%) of each eligible employee's annual salary into a Pension Plan.

**18.5    Cafeteria Plan**: LSLA will offer a Section 125 Internal Revenue Code Cafeteria Plan for each year of this Agreement.   Contributions will be transferred to the Plan within five (5) business days of the end of the month in which the contributions are made.

**18.6    Transfers**: All transfers shall be negotiated through the Union and shall be based on seniority with the exception of transfers resulting from lay-offs which will be subject to the provisions of Section 25.0 below.

**18.7    Moving Expenses**: Employees who incur moving expenses as a result of an involuntary transfer from one LSLA office to another LSLA office at least fifty (50) miles away shall be reimbursed a reasonable amount for such expenses not to exceed $6,000, to be approved in advance by the Chief Executive Officer or designee. LSLA will pay necessary relocation expenses when presented with documentation of expense. This may be done by paying the provider directly, when possible. Relocation expenses include, but are not limited to, housing deposit, first month's housing payment, cost of moving company or moving van and supplies, and any other costs that would be deductible as an expense in IRS Publication 521 as it currently exists or in any update.

## 19.0 WORKING CONDITIONS

**19.1    Working Conditions**: LSLA shall provide decent, safe, healthy, and professional working conditions. The employer shall provide each case handler with a private office suitable for the performance of his/her duties. A private interview area shall be provided for those employees who do confidential client interviews and intakes.

**19.2    Lunch Facilities**: The employer shall provide employees with an adequate lunchroom, which should include a refrigerator, paper towels and microwave.

**19.3    Grant Compliance**: All employees shall comply with provisions of the Legal Services Corporation Acts and Regulations, and any other grant requirements.

**19.4    Supplies**: The employer shall provide adequate and workable equipment and supplies for professional operation for each Unit/Office. LSLA shall provide at least one (1) copy of relevant publications (as defined by Managing Attorney), which contain rules and regulations governing those agencies within the area of expertise of each Unit/Office.  Denial of requests for relevant

LON0227

# EXHIBIT K

423  00:54:27.870 --> 00:54:35.520 Pamela Sotoodeh: I'm certain it says expeditiously as possible, I do not-- I think every case would be different, so I do not know that there is a deadline.

424  00:54:37.200 --> 00:54:40.770 K. E. Bradley Law: No intervals like two weeks, three weeks four weeks for.

425  00:54:42.990 --> 00:54:45.150 K. E. Bradley Law: On a formal complaint for it be completed.

426  00:54:47.460 --> 00:54:52.770 Pamela Sotoodeh: We tried to do those within a week's time to answer the initial complaint that.

427  00:54:58.590 --> 00:55:07.290 Pamela Sotoodeh: And not-- not to come to a conclusion within the first week I'm just saying we do address, let the complainant know that there that we received the same.

428  00:55:50.100 --> 00:55:54.780 K. E. Bradley Law: Okay. With that, that'll wrap you up Thank you Ms. Sotoodeh, I passed the witness.

429  00:55:57.240 --> 00:56:00.270 Peter Goetschel: Lonestar Legal Aid does not have further questions from Ms. Sotoodeh.

430  00:56:02.190 --> 00:56:03.030 K. E. Bradley Law: Thank you so much.

431  00:56:03.030 -- > 00:56:03.810 Pamela Sotoodeh: Okay thanks.

432  00:56:03.810 --> 00:56:08.580 Legally Under Oath: The time is 11:30am we are now off the record.

# EXHIBIT L

## Pamela Sotoodeh

| | |
|---|---|
| **From:** | Chloe Baker |
| **Sent:** | Wednesday, January 16, 2019 11:01 AM |
| **To:** | Ernest Brown |
| **Cc:** | Pamela Sotoodeh; Sonia Lopez |
| **Subject:** | Concerns |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

To whom it may concern,

I initially filed a complaint 12/28/19 regarding racial slurs that were used in the company's notes in reference to me. I was told that someone would be contacting me last week or early this week. Neither have been done, and I just wanted to check in to see where we were with my grievence.

Also, my travel reimbursements are now 4 months behind. What will be done about this?

Chloe Baker

713-775-3077

LON0188

# EXHIBIT M

308   00:36:54.870 --> 00:37:00.480 Sonia Lopez - Lonestar Legal Aid: Well, I mean again generally we meet or we would meet weekly for staff meetings.

309   00:37:04.590 --> 00:37:07.140 K. E. Bradley Law: But as far as--

310   00:37:08.370 --> 00:37:23.520 K. E. Bradley Law: Expressing or dealing directly with the with Ms. Baker's concern that once you read the once you read the report, you were-- you didn't feel it was necessary to even address that with any other-- other members of the team.

311   00:37:25.080 --> 00:37:38.370 Sonia Lopez - Lonestar Legal Aid: I believe I might have spoken to some, just to clarify what might have happened and to clarify the notes in the system, but other than that, I think it was pretty general.

312   00:37:41.310 --> 00:37:48.930 K. E. Bradley Law: Pretty general, as far as did you talk to Mr. Brown after or what did--

313   00:37:53.100 --> 00:37:59.760 K. E. Bradley Law: Did you talk to Mr. Brown, after, after you forwarded this email to ask what the next steps were.

314   00:38:00.840 --> 00:38:02.820 Sonia Lopez - Lonestar Legal Aid: I'm sure I did, but I think.

315   00:38:03.990 --> 00:38:07.200 Sonia Lopez - Lonestar Legal Aid: I would have heard a directive if I needed to do anything further.

316   00:38:11.160 --> 00:38:27.060 K. E. Bradley Law: And at that particular point once it was I guess annotated that he would accept it, it would be accepted as a as a formal complaint, as her formal complaint what were your-- what was your place in that process.

317   00:38:30.150 --> 00:38:32.580 Sonia Lopez - Lonestar Legal Aid: I was waiting for further instructions.

318   00:38:35.370 --> 00:38:43.500 K. E. Bradley Law: And during the investigatory period from this based on that complaint, did you have any role in that process-- process either.

319   00:38:44.820 --> 00:38:45.180 Sonia Lopez - Lonestar Legal Aid: No.

442  00:54:43.050 --> 00:54:45.840 Sonia Lopez - Lonestar Legal Aid: I'm sorry I don't I don't know what you mean by proxies.

443  00:54:46.050 --> 00:54:47.250 K. E. Bradley Law: I mean, did you have.

444  00:54:48.600 --> 00:54:58.320 K. E. Bradley Law: Your assistant, did you have Anna Martinez Courtney Paulding I don't know Mr. Brown, did you have someone else always.

445  00:54:59.760 --> 00:55:01.650 K. E. Bradley Law: Or did you directly do it or.

446  00:55:03.540 --> 00:55:14.550 K. E. Bradley Law: give her her assignments or her daily missions, or were they a staff attorney I'm just asking how that workflow went after that particular complaint was for file.

447  00:55:15.990 --> 00:55:17.940 Sonia Lopez - Lonestar Legal Aid: I don't think anything changed but.

448  00:55:18.960 --> 00:55:26.550 Sonia Lopez - Lonestar Legal Aid: Everything kind of flows through our case management system and cases flow, so there wasn't much of a change.

449  00:55:30.180 --> 00:55:35.700 K. E. Bradley Law: So, would you have been aware on January 22nd of additional.

450  00:55:36.990 --> 00:55:43.320 K. E. Bradley Law: work processes being assigned to Ms. Baker outside of her normal capacity.

451  00:55:45.090 --> 00:56:05.550 Sonia Lopez - Lonestar Legal Aid: I wouldn't say there was anything additional that anybody else wasn't also having I think there when the manager left there were some you know inconsistency that I think I noticed, as far as just running the office more efficiently, that I changed but it affected everybody.

452  00:56:12.990 --> 00:56:19.260 K. E. Bradley Law: Specifically on January 22 I think is an annotated that she was giving an additional--

453  00:56:20.370 --> 00:56:22.590 K. E. Bradley Law: 40 I guess those work processes.

454  00:56:24.540 --> 00:56:28.140 K. E. Bradley Law: Were you aware that they were going to be was there something that have created that--

# EXHIBIT N

177   00:18:58.980 --> 00:19:01.620 K. E. Bradley Law: And in that role where you're responsible for.

178   00:19:03.060 --> 00:19:06.630 K. E. Bradley Law: I guess time cards approval expense approval.

179   00:19:07.740 --> 00:19:08.970 K. E. Bradley Law: For all of that stuff.

180   00:19:09.510 --> 00:19:11.700 Sonia Lopez - Lonestar Legal Aid: In the absence of a managing attorney yes, sir.

181   00:19:13.200 --> 00:19:26.850 K. E. Bradley Law: And were there ever any challenges and kind of getting I guess Ms. Baker specifically all of her expenses or her time card approved or accurately sent over to HR human resources.

182   00:19:28.110 --> 00:19:31.770 Sonia Lopez - Lonestar Legal Aid: I believe her expenses were problematic.

183   00:19:35.010 --> 00:19:41.550 K. E. Bradley Law: Is this for tr-- were those expenses for travel or what were those expenses for--

184   00:19:42.090 --> 00:19:43.650 Sonia Lopez - Lonestar Legal Aid: Most of it was travel yes, sir.

185   00:19:44.610 --> 00:19:50.670 K. E. Bradley Law: Travel and that-- is that travel basically and that's what is that 72-county area or is that just.

186   00:19:51.930 --> 00:19:52.470 K. E. Bradley Law: How that worked?

187   00:19:53.370 --> 00:19:58.650 Sonia Lopez - Lonestar Legal Aid: My recollection is most of it was related to her travel to the Bakey.

188   00:19:59.280 --> 00:19:59.730 Sonia Lopez - Lonestar Legal Aid: To the vacation.

189   00:20:01.350 --> 00:20:05.190 K. E. Bradley Law: So, she was authorized traveled from combined arms to the Bakey.

190   00:20:07.140 --> 00:20:10.350 Sonia Lopez - Lonestar Legal Aid: From combined arms to the Bakey, yes, sir.

191   00:20:14.340 --> 00:20:27.330 K. E. Bradley Law: Okay. Combined arms to your knowledge would have been her-- permanent place of duty, the entire time she was worked there or was she ever officially transfer to the Bakey location.

# EXHIBIT O

## Pamela Sotoodeh

| | |
|---|---|
| **From:** | Pamela Sotoodeh |
| **Sent:** | Friday, January 25, 2019 3:56 PM |
| **To:** | Chloe Baker (chloembaker2014@gmail.com) |
| **Cc:** | Ernest Brown; Sonia Lopez; Pamela Sotoodeh |
| **Subject:** | FW: FML Paperwork |

Also, when you receive the paperwork you will notice that your twelve weeks began January 22, 2019, assuming you have been out on sick leave since that date. If my information is inaccurate, please let me know immediately.

Thank you.

Pamela Sotoodeh
Director of Administration

**From:** Pamela Sotoodeh
**Sent:** Friday, January 25, 2019 3:49 PM
**To:** Chloe Baker
**Cc:** Ernest Brown; Sonia Lopez; Pamela Sotoodeh
**Subject:** RE: FML Paperwork

Thank you for your email. I am sending you FMLA paperwork today through first class mail. Please have your physician complete the Health Certification form, along with the request for FMLA leave and return as soon as possible. Please return to me at Lone Star Legal Aid, P.O. Box 398, Houston, Texas 77001-0398. I have also included a Short term disability claim form if it becomes necessary to file.

Pamela Sotoodeh
Director of Administration
Lone Star Legal Aid
P.O. Box 398
Houston, Texas 77001-0398
psotoodeh@lonestarlegal.org
(713) 652-0077

**From:** Chloe Baker [mailto:chloembaker2014@gmail.com]
**Sent:** Friday, January 25, 2019 9:16 AM
**To:** Pamela Sotoodeh; Sonia Lopez
**Subject:** FML Paperwork

Hello,
My psychiatrist would like for me to spend a few days at home. I asked Sonia for paperwork that needed to be signed and was told that I should've received it from my Dr. After returning to her office, she informed me that I needed to contact HR to retrieve FML Paperwork. My next appointment is today around 1.

1

**LON0030**

Please send over any necessary paperwork so that I can have it filled out by my psychiatrist. Thank you.

**Chloe Baker, U.S. Air Force**
Email: Chloembaker2014@gmail.com
Phone: 713-775-3077

2

**LON0031**

# EXHIBIT P

199

```
 1              THE REPORTER:  (Indicating.)

 2              THE WITNESS:  Thank you.

 3      Q.   (By Mr. Goetschel)  Please take a minute to

 4  review this document.

 5      A.   (Reviewing document.)

 6              I've reviewed.

 7      Q.   (By Mr. Goetschel)  Do you recognize this

 8  document?

 9      A.   Yes.  I was cooperating as is stated at the

10  bottom, "Thank you for your cooperation" for exhausting

11  the grants.

12              Even though I wasn't working on it, so

13  that they would pay me different ways, even though I was

14  a permanent hire when I was first hired.

15              So, yes, I recognize this because I was

16  cooperating.

17              I think Ernest Brown's signature is on it,

18  too.

19      Q.   It says all that on this document?

20      A.   What was the question?

21      Q.   What you just described, it's on this document

22  somewhere?

23      A.   Yeah, "Thank you for your cooperation," and

24  Ernest Brown's signature is on this document, yes.

25      Q.   I see.  Do you recall when you first received
```

# EXHIBIT Q

Chloe Baker - August 27, 2021

70

1    A.   I'm sure, maybe.

2    Q.   Who?

3    A.   I don't recall.

4    Q.   So how do you know that you indicated that to

5  someone?

6    A.   I said maybe.  I'm not sure.

7    Q.   So you have no memory of indicating --

8    A.   I don't recall.

9    Q.   Is it true that you also don't recall who, if

10  anyone, you described your symptoms to at Lone Star

11  Legal Aid?

12    A.   Ask that question again.  My apologies.

13    Q.   Is it also true that you don't recall who you

14  described your symptoms to at Lone Star Legal Aid?

15    A.   Oh, no.  That's not true.  I know exactly who I

16  described my symptoms to.

17    Q.   Who did you describe your symptoms to?

18    A.   Mariah Nolan, Courtney -- there's two

19  Courtneys.  I want to say the correct one.  Courtney

20  Porter.  There's also Ryan Escobedo who worked at

21  Combined Arms.  There's also Sonia Lopez, Christa Mills,

22  Ernest Brown.  I spoke to multiple people about the

23  situation.

24    Q.   In those discussions were you discussing your

25  symptoms specifically?

Chloe Baker - August 27, 2021

1    A.   Not sure.  There were many conversations.

2    Q.   Do you remember any conversation where you

3 discussed your symptoms specifically?

4    A.   My tiredness, my fatigue, yes.

5    Q.   When did you have that conversation?

6    A.   I'm not sure.  There were multiple

7 conversations.

8    Q.   Do you remember who you had those conversations

9 with?

10   A.   I just told you.

11   Q.   I'm asking about conversations specifically

12 addressing symptoms.

13   A.   The same people I just told you.

14   Q.   Can you describe what conversation in which you

15 described symptoms to someone?

16   A.   There's actually an e-mail thread.  I have a

17 printout of an e-mail thread of me saying, Hey, that

18 wasn't really nice.  That kind of made me feel kind of

19 bad, what you said.

20        And the person who I'm referring to

21 responded that, Yeah, that was mean.  That was mean of

22 me to say.  So my symptom of feeling sad and stuff like

23 that, I would say that that would exude that.

24        MR. GOETSCHEL:  I am handing the court

25 reporter a document in a moment once I pull it out.  I